**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket Nos. 197 & 203** |
| In re | Chapter 15 |
| FTX DIGITAL MARKETS LTD.,[2] | Case No. 22-11217 (JTD) |
| Debtor in a Foreign Proceeding. | **Re: Docket No. 27** |

**REPLY IN SUPPORT OF MOTION OF THE JOINT PROVISIONAL
LIQUIDATORS OF FTX DIGITAL MARKETS LTD. FOR ENTRY OF AN
ORDER SHORTENING THE NOTICE AND OBJECTION PERIODS WITH
RESPECT TO THE EMERGENCY MOTION OF THE JOINT PROVISIONAL
LIQUIDATORS OF FTX DIGITAL MARKETS LTD. (I) FOR RELIEF FROM
AUTOMATIC STAY AND (II) TO COMPEL TURNOVER OF ELECTRONIC
RECORDS UNDER SECTIONS 542, 1519(A)(3), 1521(A)(7)
AND 1522 OF THE BANKRUPTCY CODE**

Brian C. Simms KC, Kevin G. Cambridge, and Peter Greaves (the "**Joint Provisional
Liquidators**"), in their capacity as the duly appointed joint provisional liquidators of FTX Digital
Markets Ltd. ("**FTX Digital**" or the "**Company**") and foreign representatives of the Bahamian

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and
4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the debtors
(the "**U.S. Debtors**") and the last four digits of their federal tax identification numbers is not provided herein. A
complete list of such information may be obtained on the website of the U.S. Debtors' claims and noticing agent at
https://cases.ra.kroll.com/FTX.

[2] FTX Digital Markets Ltd. (in Provisional Liquidation) was incorporated in the Commonwealth of The Bahamas as
an International Business Company, registered number 207269B.

Provisional Liquidation[3] of FTX Digital hereby file this reply in support of the motion to shorten (the "**Motion to Shorten**") the notice and objection periods with respect to the *Emergency Motion of the Joint Provisional Liquidators of FTX Digital Markets Ltd. (I) for Relief from Automatic Stay and (II) to Compel Turnover of Electronic Records Under Sections 542, 1519(a)(3), 1521(a)(7) and 1522 of the Bankruptcy Code* (the "**Emergency Motion**").  In further support of the Motion to Shorten, the Joint Provisional Liquidators rely upon and incorporate by reference the *Declaration of Peter Greaves in Support of Emergency Motion of the Joint Provisional Liquidators of FTX Digital Markets Ltd. (I) for Relief from Automatic Stay and (II) to Compel Turnover of Electronic Records Under Sections 542, 1519(a)(3), 1521(a)(7) and 1522 of the Bankruptcy Code* (the "**Greaves Declaration**") and respectfully state as follows:

## ARGUMENT

1.    The sole issue before the Court today is whether the Court will hear the Emergency Motion on an expedited basis this week or on normal notice in the beginning of 2023.  As the only party objecting,[4] the U.S. Debtors raise only two objections which are relevant to the Motion to Shorten: (1) the Joint Provisional Liquidators might have been entitled to expediting had they not allegedly sat on their hands by waiting for a month file the Emergency Motion, and (2) there is no emergency here because no matter how quickly the Joint Provisional Liquidators had acted, they

---

[3] Capitalized terms used herein not otherwise defined shall have the meanings set forth in the Motion to Shorten and the Emergency Motion.

[4] The U.S. Debtors filed the *Debtors' Objection to Motion for Entry of an Order Shortening the Notice and Objection Periods with Respect to the Emergency Motion (I) For Relief From Automatic Stay and (II) To Compel Turnover of Electronic Records Under Sections 542, 1519(A)(3), 1521(A)(7) and 1522 of the Bankruptcy Code*, Case No. 22-11068 (JTD) [Docket No. 203] (the "**Objection**" or "**Obj.**") and supporting *Declaration of James L. Bromley in Support of Debtors' Objection to Motion for Entry of an Order Shortening the Notice and Objection Periods with Respect to Emergency Motion (I) For Relief From Automatic Stay and (II) To Compel Turnover of Electronic Records Under Sections 542, 1519(A)(3), 1521(A)(7) and 1522 of the Bankruptcy Code*, Case No. 22-11068 [Docket No. 205] (the "**Bromley Declaration**" or "**Bromley Decl.**") on Monday, December 12, 2022.

either do not need the Recorded Information or are not entitled to it.  Neither inconsistent

contention is true, and the Court should grant the Motion to Shorten.

> **A.    The Joint Provisional Liquidators Have Been Asking For This Information For A Month.**

2.    <u>First</u>, the Joint Provisional Liquidators have hardly sat on their hands and certainly

did not "wait a month" to request access to their own information of FTX Digital.[5]  As stated in

the Greaves Declaration, the Joint Provisional Liquidators began requesting access to the property

of FTX Digital, through the employees of FTX Digital, as soon as they were appointed and access

was cut off to FTX Digital employees.  Greaves Decl. ¶ 10.  On or around November 15, 2022, an

information sharing protocol was discussed between U.S. Debtors' counsel, Sullivan & Cromwell,

and the Joint Provisional Liquidators' then counsel Holland & Knight.

3.    During and around the time of the First Day Hearing (November 22, 2022), White

& Case also had conversations with Sullivan & Cromwell regarding access to information.  Indeed,

at the First Day Hearing, Mr. Shore of White & Case stated on the record that "we have been

working with the Debtors to begin the process of coordinating our efforts on information flow,

asset containment, and judicial coordination."  First Day Hearing Tr' 57: 18-23.  "There is a lot

that needs to get done between now and a recognition hearing with respect to information

gathering…" *Id.* 58:1-6.  Mr. Shore concluded stating that if "we can't get to a place where we

can develop [] information flow between the dotcom silo and the JPLs[, w]e may have to come

back and get provisional relief because from the perspective of the JPLs order number one in this

case is to make sure that all assets are protected and all information is protected." *Id.* 58:14-25.

---

[5]  There is no dispute here that the U.S. Debtors are currently holding information on the AWS and GCP systems, which plainly either belong to FTX Digital, or as to which FTX Digital has a direct right of access.  Included in that data are the actual records of FTX Digital's customers.

4.      On November 30, 2022, White & Case sent a letter to the U.S. Debtors, attached hereto as **Exhibit A**, indicating that the U.S. Debtors should preserve the Recorded Information. On December 1, 2022, White & Case then had a telephonic meeting with Sullivan & Cromwell regarding turnover of that information.  Sullivan & Cromwell indicated that they would come back with an answer promptly.  After days of silence, White & Case sent the December 7th letter as discussed in the Emergency Motion and the Objection.  *See* Bromley Decl. Ex. H.  On December 8th, not in response to the December 7th letter, Sullivan & Cromwell asked for an "in person meeting" "next Wednesday" with counsel to the Commission to discuss a "number of issues of mutual interest."  *Id.* Ex. I.  However, given concerns that the U.S. Debtors were simply stringing the process along the Joint Provisional Liquidators felt that filing the Emergency Motion would be prudent while the U.S. Debtors continued to find a suitable time to meet.

5.      Then, well before the Debtors filed their Objection, White & Case indicated a meeting time and place on the date originally requested.  *See* **Exhibit B**, attached hereto.  The Debtors responded, confused, about whether White & Case was asking for another week to meet. At no point at any of these exchanges, did the U.S. Debtors raise the Joint Provisional Liquidators' rights to FTX Digital's information or whether it would be sent to the Commission or Messers. Bankman Fried and Gary Wang.

6.      Given the U.S. Debtors' Objection, that filing is fully justified.  Despite attempting to appear cooperative, the U.S. Debtors have been stringing the process along.  In the first paragraph of their Objection, the U.S. Debtors state (with zero evidence) that, if the Court grants the relief requested by the Joint Provisional Liquidators in the Emergency Motion, "full and total access of Debtors' cloud-based systems….would be provided immediately to the Government of the Bahamas and to Messers. Samuel Bankman-Fried and Gary Wang."  Obj. ¶ 1.  That allegation,

is both false and irresponsible.  Had the Debtors just made clear from the start that legitimate requests for necessary information would be met with *seriatim* excuses for non-production, the Joint Provisional Liquidators would have filed the Emergency Motion long before last week, and it could have been heard on normal notice.

7.      And, it is not as if the Joint Provisional Liquidators have not been willing to compromise.  While the Joint Provisional Liquidators have repeatedly explained the exigency of their request, and informed the U.S. Debtors that they were "prepared to seek urgent assistance from the Bankruptcy Court if necessary," (Emergency Motion, Ex. A), the Joint Provisional Liquidators' have indicated that total access can wait provided that they get access to the "clone" of the live database that would ensure that no information is compromised or manipulated. Emergency Motion, Ex. A ("We understand that for certain sensitive systems you have created a recent 'clone' of the live database. For immediate purposes, access to these clones will be sufficient.").

> **B.      There Is An Emergency Here**

8.      <u>Second</u>, the U.S. Debtors contend that there is simply no exigency in the Joint Provisional Liquidators' access to information regarding their own debtor and its customers.  That remarkable proposition is directly contrary to the positions taken by the U.S. Debtors regarding their own information and the need for cooperation with foreign regulators and proceedings in order to marshal and protect all the information.

9.      Indeed, in his declaration in support of the U.S. Debtors' chapter 11 petitions and first day pleadings, John J. Ray III outlined the "five core objectives" of the chapter 11 cases:

> (a) **<u>Implementation of Controls</u>**: the implementation of accounting, audit, cash management, cybersecurity, human resources, risk management, data protection and other systems that did not exist, or did not exist to an appropriate degree, prior to my appointment;

(b) **Asset Protection & Recovery**: the location and security of property of the estate, a substantial portion of which may be missing or stolen;

(c) **Transparency and Investigation**: the pending, comprehensive, transparent and deliberate investigation into claims against Mr. Samuel Bankman-Fried, the other co-founders of the Debtors and third parties, in coordination with regulatory stakeholders in the United States and around the world;

(d) **Efficiency and Coordination**: cooperation and coordination with insolvency proceedings of subsidiary companies in other jurisdictions; and

(e) **Maximization of Value**: the maximization of value for all stakeholders through the eventual reorganization or sale of the Debtors' complex array of businesses, investments and digital and physical property.

Case No. 22-11068, Docket No. 24 at ¶ 6.  Mr. Ray added that "Transparency with regulators around the world is an important objective for the Debtors.  Since Friday, the Debtors have been in contact with dozens of regulators throughout the United States and around the world, and will continue to be as these cases continue." *Id*. ¶ 73.

10.     The U.S. Debtors also specifically noted in their motion to transfer the Chapter 15 Case to this Court that "[t]here is no doubt that there will need to be close coordination between the Chapter 11 Cases and the Bahamas proceeding relating to FTX DM."  Case 22-11068-JTD, Docket No. 22 at ¶ 3.  The U.S. Debtors even pursued that motion on an emergency basis, representing to this Court "the urgent need for clarity on where and how the Debtors' assets (and the assets of FTX DM in the United States) will be administered."  Case 22-11068-JTD, Docket No. 22 at ¶ 3.  In short rapid and transparent information access and sharing has, from the start, been a core piece of the U.S. Debtors' stated goals.

11.     Mr. Ray then reiterated the U.S. Debtors' "five core objectives" in his testimony before Congress yesterday, stating that to further their objective of transparency, the U.S. Debtors were "working in close coordination with .. . . . foreign regulatory . . .  authorities."  Testimony of Mr. John J. Ray III, attached hereto as **Exhibit C**.  Mr. Ray added that the chapter 11 cases

"require[ ] cooperation and coordination with insolvency proceedings of subsidiary companies in other jurisdictions." *Id*.

12.     Instead of coordinating efforts consistent with their supposed "five core objectives," however, the U.S. Debtors simply dismiss the Joint Provisional Liquidators' relevance, patronizingly arguing that "[t]o the extent there is any risk to the assets, documents, or information, the Debtors are taking all steps to ameliorate such risk. The Joint Provisional Liquidators can do nothing more to ameliorate any risk than is already being done by the Debtors." Opp. ¶ 3. And, in response to the Joint Provisional Liquidators' concerns about the risk of dissipation of assets and information, the U.S. Debtors simply state that "no such risk exists." *Id.* ¶ 4. But the Joint Provisional Liquidators cannot simply accept the U.S. Debtors' *ipse dixit* that FTX Digital's assets and information are secure, and abandon their court-mandated duties to protect the FTX Digital estate. Indeed, the Supreme Court of The Bahamas has charged the Joint Provisional Liquidators, and they are statutorily obligated, to take all and any necessary steps to protect the assets of FTX Digital, but they simply cannot perform the duties assigned to them by without access to the Recorded Information. Greaves Decl. ¶ 11.

**C.     Misstatements and Omissions**

13.     As a final matter, while the only issue on the table is expediting, the U.S. Debtors' Objection is replete with factual errors and erroneous allegations ranging from the extreme to the mundane, all of which improperly attack the Bahamian Government, the Bahamian Attorney General, the Commission, the Bahamian Court and the Joint Provisional Liquidators. But, to be clear, all are distinct entities, just as the U.S. Government, the U.S. Attorney General, the U.S. Securities Exchange Commission, the U.S. Bankruptcy Court, and U.S. Debtors are here. In any event, substantially all of the allegations regarding others' conduct have nothing to do with the

Motion to Shorten.  While the Joint Provisional Liquidators will address each misstatement at the appropriate time, and reserve all rights with respect to each, one must be corrected now.

14.     At paragraph 9 of their Objection, the Debtors contend, without providing any evidence to the Court, that the email sent from Mr. Bankman-Fried to the Commission in which Mr. Bankman-Fried said he would open up withdrawals for all Bahamian customers on FTX's exchanges evidences their "close and frequent contact."  Obj. ¶ 9.  Mr. Ray went so far as to tell Congress that the email evidenced "collusion."  The insinuation here is that the Commission assisted Mr. Bankman-Fried in the disposition of assets and therefore the Joint Provisional Liquidators should be stripped of their rights to access their own information.  That allegation is equally inflaming and untrue.  That very email referenced in the Objection was the same email that the Commission used as evidence to obtain authorization to commence FTX Digital's insolvency proceeding in the Bahamas.  In the declaration which has now been unsealed,[6] the Commission stated that it "cannot condone the preferential treatment of any investor or client of FTX Digital or otherwise" in the liquidation.  *See* **Exhibit C**.  Notwithstanding the U.S. Debtors' incorrect aspersions,[7] it is the goal, too, of the Joint Provisional Liquidators to investigate and potentially claw back the alleged $100 million in cryptocurrency withdrawals that occurred between November 10, 2022 and November 11, 2022 from 1,500 individuals, which the Joint

---

[6]     Throughout the Objection, the U.S. Debtors protest the fact that, just as in this Court, the Bahamian Court has sealed certain information from the docket.  Far from indicating that the Bahamian proceedings are "secret" (they are not) the sealing reflects the fact that certain information (like customer names in the U.S. Proceedings are confidential. Nonetheless, the Joint Provisional Liquidators have been working along with the Commission to get the Bahamian Court to unseal the relevant and necessary parts of the record, as is common practice in the Bahamian proceeding (just as it is common here) to make public certain pleadings in FTX Digital's liquidation proceedings.  As of December 13, 2022, the Joint Provisional Liquidators have been able to obtain the supporting declaration to the Commission's application to the Bahamian Supreme Court to start the liquidation proceeding of FTX Digital, which is attached as **Exhibit D** hereto.

[7]  The Commission disputes much of what is said in the Objection, too, in their December 13, 2022 press release.  *See* **Exhibit E.**

Provisional Liquidators believe were all from FTX Digital's assets for FTX Digital's customers. It seems at best that the U.S. Debtors, who continue to employ employees and legal counsel who were indisputably present while frauds were committed, lack comity in refusing to produce FTX Digital information to the court-appointed fiduciaries of the Company on the basis that it appears (contrary to any evidence) that the wrongdoer here was the Bahamian Government.

15.     Accordingly, the Joint Provisional Liquidators respectfully submit that good cause exists pursuant to Bankruptcy Rule 9006 and Local Rule 9006-1 for the relief requested in the Motion to Shorten.

## CONCLUSION

WHEREFORE, for the reasons set forth herein and in the Motion to Shorten, the Joint Provisional Liquidators respectfully request that the Court enter the Proposed Order, granting the relief requested in this Motion to Shorten and such other and further relief as may be just and proper.

Dated: December 14, 2022

/s/   Brendan J. Schlauch
**RICHARDS, LAYTON & FINGER, P.A.**

Kevin Gross (No. 209)
Paul N. Heath (Bar No. 3704)
Brendan J. Schlauch (Bar No. 6115)
David T. Queroli (Bar No. 6318)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
gross@rlf.com
heath@rlf.com
schlauch@rlf.com
queroli@rlf.com


—and—

**WHITE & CASE LLP**

Jessica C. Lauria (admitted *pro hac vice*)
J. Christopher Shore (admitted *pro hac vice*)
Brian D. Pfeiffer (admitted *pro hac vice*)
Mark Franke (admitted *pro hac vice*)
Brett L. Bakemeyer (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
jessica.lauria@whitecase.com
cshore@whitecase.com
brian.pfeiffer@whitecase.com
mark.franke@whitecase.com
brett.bakemeyer@whitecase.com


Thomas E Lauria (admitted *pro hac vice*)
Richard S. Kebrdle (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
tlauria@whitecase.com
rkebrdle@whitecase.com

*Attorneys for the Joint Provisional*
*Liquidators of FTX Digital Markets Ltd. (In*
*Provisional Liquidation)*