**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 15 |
| FTX DIGITAL MARKETS LTD.,[1] | ) | Case No. 22-11217 (JTD) |
| Debtor in a Foreign Proceeding. | ) | **Hearing Date Requested:** **January 6, 2023 at 9:30 a.m. (ET)** **Obj. Deadline:** **TBD** |

**SILVERGATE BANK'S PRELIMINARY RESPONSE TO MOTION OF THE JOINT PROVISIONAL LIQUIDATORS OF FTX DIGITAL MARKETS LTD. FOR PROVISIONAL RELIEF UNDER 11 U.S.C. §§ 105(a), 542(e), 1519(a), 1519(e), 1521(a)(7), and 1522**

Now Comes Silvergate Bank ("**Silvergate**") and submits this Preliminary Response to the Motion for Provisional Relief [D.I. 55] ("**Motion**") filed by the Joint Provisional Liquidators ("**JPLs**" or "**Foreign Representatives**") of FTX Digital Markets Ltd. ("**Debtor**"):[2]

1. The Motion is now moot. The accounts were seized on December 30, 2022, by a warrant issued from the U.S. District Court for the Southern District of New York pursuant to 18 U.S.C. § 981 as a part of a civil forfeiture process related to criminal proceedings in that court. A copy of the warrant is attached hereto as Exhibit 1. Litigation regarding the funds in the Silvergate accounts described should proceed U.S. District Court for the Southern District of New York rather than pursuant to the Motion. The additional information below does not waive the mootness of the relief requested in the Motion.

---

[1] FTX Digital Markets Ltd. (in Provisional Liquidation) was incorporated in the Commonwealth of The Bahamas as an International Business Company, registered number 207269B.

[2] This Preliminary Response is filed in anticipation of the Motion, and scheduling regarding the Motion, being discussed at a status conference on January 4.

2. The Motion, filed near midnight on December 23, implies that exigent circumstances exist regarding funds deposited into demand deposit accounts at Silvergate but provides no evidence to support its argument. The documents attached as exhibits to the Motion show multiple confirmations that the accounts were promptly frozen at the request of the JPLs and remained frozen thereafter.

3. The Motion also fails to explain what circumstances changed in the weeks that passed after Silvergate first confirmed that the accounts had been frozen (on November 18), it reconfirmed that the accounts had been frozen (on December 5 and December 12) and the filing of the Motion that would create exigent circumstances of any kind.

4. The Motion was also filed without any prior outreach by counsel for the JPLs to counsel for Silvergate – who had been identified to counsel for the JPLs in Silvergate's December 12 message. See Motion Ex. C-4. Had that outreach occurred, it is likely that a consensual order could have been negotiated to enable the JPLs (after notice and an opportunity for hearing) to be added as signatories on the bank accounts and Silvergate protected in the course of a direction to disburse or transfer funds within the U.S. The JPLs opted for a hostile motion with spurious, thinly-sourced allegations and inferences instead of an attempt for relatively standard cash management order to address issues of who should have signatory authority over the accounts and the appropriate protections for Silvergate's compliance with authorized directions by the JPLs. In short, the JPLs could have requested that they be authorized to sign documents to be treated as any other bank customer but did not do so.

5. Silvergate, having repeatedly confirmed that the accounts had been frozen, vigorously disputes the implications that the funds are, in any way, at risk of loss or dissipation. The Debtor (under the management of the JPLs) should have no greater rights vis-à-vis Silvergate

and Silvergate should have no greater obligations to the Debtor (or the JPLs in their representative roles) than any other customer of the bank. That includes customers' obligations to pay all accrued bank fees and charges.

6. The Motion, in paragraph 15, incorrectly implies that the Debtor's only request on December 12 (see Motion Ex. C-4) was for "all Bank Records."[3]

a. As an initial matter, the JPLs' definition of "Bank Records" is an amorphous compilation of documents that represent "all books, documents, records, and papers (the "**Bank Records**") and any other relevant information and records related to the FTX Digital U.S. Accounts beginning from the account opening dates" . . . . (Motion, paragraph 19). The request for documents aspect of the December 12 message was limited to bank statements alone[4] – not the expansive definition of "Bank Records" that includes "books, documents, records and papers" or "any other relevant information and records."

b. More significantly, the attorney's December 12 email message also included a request to send millions of dollars to an account in the Bahamas – beyond the control of U.S. Courts, including this Court. The wiring instructions that were attached are attached hereto as Exhibit 2 (redacted) and state on their face that they are "Instructions For International Wire Transfer of Funds."

c. The JPLs, having invoked this Court's jurisdiction based on the existence of assets within the U.S. and while in active disputes with the new management of the

---

[3] "On December 12, 2022, counsel to the Foreign Representatives requested that Silvergate turn over all Bank Records associated with the Silvergate Accounts. Silvergate declined to do so without an order from this Court." This was footnoted to the statement that, "Copies of all written correspondence with Silvergate are attached hereto as Exhibit C."

[4] The document request from the attorney was, "Can you please send all bank account statements on behalf of FTX Digital Markets Ltd.?" (Motion Ex. C-4).

Chapter 11 FTX debtors, apparently tasked an attorney with asking Silvergate to ignore this Court entirely and send funds outside of the U.S. There was never any direct communication from any of the JPLs requesting the transfer of those funds.

7. Paragraph 15 of the Motion makes it clear that Silvergate did exactly what the JPLs requested in the initial November 15 letter – "not transfer or deal with those assets in anyway whatsoever unless expressly directed in writing by us and to freeze any and all assets that you hold until further written communication from us." (Motion Ex. C-1, page 2)[5] The extent of the litigation involved in the cases involving the Chapter 11 FTX debtors and the JPLs indicated they should have known that funds would not be transferred anywhere without a court order since the accounts had been frozen at the JPLs' request.

8. As a procedural matter, the Motion is a thinly-veiled request for either a mandatory injunction or a turnover action against a party that has never filed a proof of claim in this case or otherwise appeared in the case. Bankruptcy Rule 7001 requires that each of these be pursued in an adversary proceeding – not by way of a substantive hearing less than 14 days after the filing of a motion.

9. The Motion also improperly seeks to provide the JPLs with expedited access to Silvergate's information and documents well beyond what would be provided to bank customers and without compliance with any discovery process, procedures or safeguards and without acknowledging that the JPLs should be required to pay for any such account research projects – just as any Silvergate customer would understand that significant costs are associated with such

---

[5] The rejection of the improper request to transfer funds proved that the account freeze was in effect. It also proved that there was no basis for this statement in paragraph 34 of the Motion, "For this reason, the Foreign Representatives cannot presently ensure that the funds on deposit in the FTX Digital U.S. Accounts and the related Bank Records are safeguarded by appropriate protections, including limiting signature authority to the Foreign Representatives – the only parties with corporate authority over the assets and affairs of the Chapter 15 Debtor."

requests. The request for an order compelling the delivery of documents and information within two (2) business days is patently unreasonable and is hardly the "minimal burden" that the Motion implies. See Motion, paragraph 36. Any request beyond providing bank statements would need to be reviewed, information and documents compiled, the compiled documents reviewed for responsiveness and quality control, reviewed by counsel for Silvergate, prepared for delivery and then delivered. It is not rational to believe that such a burden would be either reasonable or achievable in the two business day turnaround suggested by the Motion – especially since there could be significant disagreement regarding what is and what is not included within the description of "any other relevant information and records related to the FTX Digital U.S. Accounts beginning from the account opening dates." The Rules of Bankruptcy Procedure provide ample avenues for discovery processes should that be necessary or appropriate (especially since the assumption is that these demands would follow the transfer of the funds to the JPLs' selected bank in the U.S.). Utilizing recognized discovery processes would also protect Silvergate and its rights. The JPLs decision to wait weeks before requesting bank statements is a better indication of the lack of urgency that they have displayed.

10. The Motion also improperly seeks the entry of an order compelling the transfer of funds to an unspecified destination. Neither the proposed Order (Motion Ex. A) nor the Motion ever identify the location of the "FTX Digital Escrow Account." Without information regarding the name or location of any bank that would, in theory, receive the transfer, it is difficult to see how such an order could ever be enforced.

11. The Motion lacks evidentiary basis to support the inferences by the JPLs regarding Silvergate's ability to fulfill its obligations under the various account agreements. Paragraph 17 of the Motion refers to four lawsuits - three that name Silvergate's parent (Silvergate Capital

Corporation) and one that names Silvergate Bank as defendants. In doing so, the Motion acknowledges that Silvergate and Silvergate Capital Corporation are different entities yet the Motion freely conflates those entities. References to stock value changes refer to market fluctuations in the publicly traded stock price of Silvergate Capital Corp. (Ticker: SI). Silvergate is a bank and is not the same company whose stock is publicly traded and the documents that Silvergate Capital Corporation filed with the SEC note that these are separate entities.

12. The Declaration by one of the JPLs – Docket No. 56 – is completely devoid of any evidence regarding the abilities of Silvergate to fulfill its obligations under the various deposit agreements. It is also devoid of any evidentiary support for an expedited hearing.

13. The Motion is likewise free of any evidentiary support (or any allegations to support) the need for "urgent relief." The nakedly conclusory statements in the Declaration are devoid of relevant admissible evidence.

14. The Motion further fails to recognize (and authorize the payment of) the bank fees and charges that accrued during November and December and that remain unpaid as of today. Additional fees and charges will accrue during January. As of December 29, the amount of bank fees and charges that were incurred and unpaid totaled $137,056.90 with $126,932.90 being incurred in November and $10,124.00 being accrued in December amount.

15. Finally, the proposed order (Motion Ex. A, f/n3) includes an inherently suspect request for a Draconian order to apply to additional "Banks" who are not named and which may or may not have had any opportunity to be heard before obligations are imposed upon them. Expanding the relief to banks to be named later should only be permitted after those banks receive notice and have an opportunity to be heard.

Premises Considered, Silvergate prays that upon consideration of the Motion that the Court will deny the same as moot and grant Silvergate such other and further relief to which it might show itself to be entitled.

Dated: January 4, 2023
Wilmington, Delaware

Respectfully submitted,

**CHIPMAN BROWN CICERO & COLE, LLP**

*/s/ William E. Chipman, Jr.*
William E. Chipman, Jr. (No. 3818)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0191
Email: chipman@chipmanbrown.com

-and-

John D. Penn (*pro hac vice* forthcoming)
**PERKINS COIE LLP**
500 N. Akard Street, Suite 3300
Dallas, Texas 75201
Telephone: (214) 965-7700
Email: jpenn@perkinscoie.com

*Counsel for Silvergate Bank*