**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 15 |
| FTX DIGITAL MARKETS LTD.,[1] | Case No. 22-11217 (JTD) |
| Debtor in a Foreign Proceeding. | **Obj. Deadline: June 18, 2024, at 4:00 p.m. (Eastern)**<br>**Hearing Date:  June 25, 2024, at 3:00 p.m. (Eastern)** |

**THE CELSIUS LITIGATION ADMINISTRATOR'S
MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

Mohsin Meghji, as Litigation Administrator (the "Celsius Litigation Administrator") for Celsius Network LLC and its affiliated debtors (collectively, "Celsius"), respectfully submits this motion (the "Motion") for entry of an order substantially in the form attached as **Exhibit A** (the "Proposed Order"), lifting the automatic stay for the purpose of allowing the Celsius Litigation Administrator to commence, adjudicate, and liquidate certain actions in the U.S. Bankruptcy Court for the Southern District of New York (the "NY Celsius Bankruptcy Court"), where Celsius's chapter 11 cases were filed and are pending under the jointly-administered caption *In re Celsius Network LLC, et al.*, Case Number: 22-10964 (MG) (the "Celsius Bankruptcy").  The actions seek to avoid and recover certain transfers under Sections 547 and 550 of Title 11 of the United States Code (the "Bankruptcy Code") received by the above-named debtor ("FTX DM") as an immediate or mediate ("subsequent") transferee from Celsius (the "FTX DM Preference Action").  Following entry of the Proposed Order, the Celsius Litigation Administrator intends to file a complaint in the NY Celsius Bankruptcy Court, a draft of which is attached as **Exhibit B** (the "Draft Complaint"),

---

[1]    FTX Digital Markets Ltd. (in Official Liquidation) was incorporated in the Commonwealth of The Bahamas as an International Business Company, registered number 207269B.

on or before July 13, 2024 to satisfy the statute of limitations under Section 546(a) of the Bankruptcy Code.[2]

In support of this Motion, the Celsius Litigation Administrator submits the declaration of Kenneth Ehrler (the "Ehrler Declaration") filed contemporaneously herewith, and respectfully states as follows:

## PRELIMINARY STATEMENT

1.     Pursuant to Celsius's plan of reorganization, the Celsius Litigation Administrator was appointed to prosecute, settle, or otherwise resolve certain remaining disputed claims on behalf of Celsius's estates, including the FTX DM Preference Action.  Consistent with this authority, the Celsius Litigation Administrator intends to timely commence thousands of adversary proceedings (the "Preference Actions") in the Celsius Bankruptcy to avoid preferential transfers made by Celsius to certain of its account holders during the ninety (90) day period preceding the Celsius Petition Date (the "Celsius Preference Period").  The majority of these preference actions will *not* involve FTX DM or implicate the automatic stay in this case (the "Non-FTX DM Preference Actions").  However, during the Celsius Preference Period, there were a number of occasions in which Celsius account holders withdrew Celsius's assets from the Celsius platform during the Celsius Preference Period and then deposited such property onto the FTX DM cryptocurrency exchange.[3]

2.     Both the FTX DM Preference Action and Non-FTX DM Preference Actions are core proceedings in the Celsius Bankruptcy, share substantially similar issues of law and fact, and

---

[2]     The Celsius Litigation Administrator reserves all rights to amend the Draft Complaint and/or the Transfer Schedules (as defined below), including to add or remove transferees and/or transfers, and to revise, among other things, the calculation of a transferee's preference liability with respect to additional transfers and/or reductions of transfers based on any defenses.

[3]     A list of account holders of Celsius who transferred Celsius's property off the Celsius cryptocurrency exchange platform during the Celsius Preference Period and deposited such property onto the FTX DM cryptocurrency

include technical, legal and factual matters specific to Celsius. Indeed, the FTX DM Preference Action against FTX DM as a subsequent transferee will correspond to Non-FTX DM Preference Actions against related initial transferees (*i.e.*, customers) that will be filed simultaneously. Indeed, the action against FTX DM as a subsequent transferee and each corresponding action against the pertinent initial transferee stems from a single preferential transfer pertinent to both actions, and adjudication of whether to avoid such transfers will involve the same underlying facts and circumstances.

3.      By this Motion, the Celsius Litigation Administrator seeks to commence, adjudicate, and liquidate the FTX DM Preference Action in the NY Celsius Bankruptcy Court having jurisdiction over the Celsius Bankruptcy, in which thousands of similar Non-FTX DM Preference Actions will be heard, including, as noted, parallel Preference Actions against the initial transferees.

4.      In addition to promoting judicial economy, the unique circumstances of the preference actions against FTX DM as a subsequent transferee under Section 550 of the Bankruptcy Code strongly support lifting the stay for the proposed purposes. First, FTX DM will not be prejudiced by allowing the FTX DM Preference Action to proceed in the NY Celsius Bankruptcy Court. The FTX DM Preference Action does not seek to deplete FTX's estate or otherwise delay implementation of any liquidation of FTX DM. This is because the initial transferees in these actions are creditors of FTX DM, who are to be classified as holders of a DM Customer Entitlement Claim and/or a DM Excess Claim under a FTX DM liquidation (the "DM

---

exchange is attached to the Ehrler Declaration as Exhibit C. The Celsius Litigation Administrator intends to bring preference actions against these initial transferees in the NY Celsius Bankruptcy Court where the Celsius Bankruptcy is pending. Following discovery, it may be determined that some of the initial transferees listed on Exhibit C to the Ehrler Declaration did not ultimately transfer assets to FTX DM. To be clear, by this Motion, the Celsius Litigation Administrator seeks only to lift the automatic stay as necessary to bring preference actions against FTX DM to the extent that it was a subsequent transferee of avoidable transfers.

Liquidation") as set forth in the *Order Authorizing and Approving the Debtors' and FTX DM's Entry Into, and Performance of Their Obligations Under, (I) The Global Settlement Agreement and (II) the Loan Agreement* and its attached *Global Settlement Agreement* (the "Global Settlement"), D.I. 141.  In the event that the avoidable transfers are not recovered from the initial customer transferees of Celsius, the FTX DM Preference Action seeks to recover from FTX DM, as subsequent transferee of the initial customer transferees of Celsius, by redirecting to Celsius, in satisfaction of the avoidance claim, certain payments that FTX DM proposes to be distributed to its creditors (*i.e.*, Celsius's initial customer transferees) under the DM Liquidation.

5.      To be clear, the FTX DM Preference Action does not seek to increase the payments that FTX DM intends to make as contemplated in the DM Liquidation, as set forth in the Global Settlement.  Because the FTX DM Preference Action does not enlarge FTX DM's obligations or modify the value of distributions to creditors under the DM Liquidation and would merely redirect distributions under the DM Liquidation from the initial transferees (who are not entitled to the underlying assets) to Celsius for the benefit of all of Celsius's creditors, FTX DM will not be prejudiced by the prosecution and adjudication of the FTX DM Preference Action in the NY Celsius Bankruptcy Court.

6.      Permitting Celsius to commence and litigate the FTX DM Preference Action in the NY Celsius Bankruptcy Court is necessary and appropriate to avoid potentially duplicative proceedings or inconsistent rulings from multiple courts on core issues concerning Celsius.  As the court presiding over the Celsius Bankruptcy, the NY Celsius Bankruptcy Court is the only court with jurisdiction over both the FTX DM Preference Action and Non-FTX DM Preference Actions.  That court is also well versed on matters that will be central to these proceedings, including the operations of the Celsius cryptocurrency exchange platform, the treatment of "Earn"

vs. "Custody" accounts, and related matters.  The NY Celsius Bankruptcy Court issued at least one relevant ruling holding that assets deposited by Celsius's customers into the accounts in question constituted property of Celsius.  *See In re Celsius Network LLC*, 647 B.R. 631 (Bankr. S.D.N.Y. 2023).  If the stay is not lifted in these cases, the Celsius Litigation Administrator will be forced to prosecute Non-FTX DM Preference Actions in the NY Celsius Bankruptcy Court and the duplicative FTX DM Preference Action in this Court.  Modifying the stay in the limited scope as requested will serve the interests of all parties and both courts.

7.      For these reasons, and as more fully explained below, this Court should grant the Motion.

## **STATEMENT OF THE FACTS**

8.      On July 13, 2022 (the "Celsius Petition Date"), Celsius filed chapter 11 petitions in the NY Celsius Bankruptcy Court.  On January 29, 2024, Celsius filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* (the "Celsius Plan").  *See In re Celsius Network LLC*, Case No. 22-10964 (Bankr. S.D.N.Y. Jul. 13, 2022), D.I. 4289.  On January 31, 2024, the Celsius Plan became effective.  *Id*., D.I. 4298.[4]

9.      Pursuant to the Celsius Plan, the Celsius Litigation Administrator was appointed to prosecute, settle, or otherwise resolve certain remaining disputed claims on behalf of Celsius's

---

[4]  On June 29 and 30, 2023, Celsius timely filed one hundred and three (103) proofs of claim (collectively, the "Proofs of Claim") asserting claims against the Chapter 11 Debtors (defined below), including (i) a secured claim against Alameda Research Ltd., as borrower, to Celsius under a certain loan in the amount of approximately $14,176,996, (ii) avoidance claims of prepetition transfers pursuant to sections 547, 548, and 550 of the Bankruptcy Code, and (iii) causes of action against the Chapter 11 Debtors including, but are not limited to, libel, slander, tortious interference with business relations, tortious interference with contract, tortious interference with business prospects, business disparagement, restraint of trade, unfair competition, fraud, negligence, misrepresentation, defamation, and conspiracy, asserting liability of no less than $2 billion in the aggregate.  For the avoidance of doubt, by this Motion, the Celsius Litigation Administrator seeks to lift the automatic stay only with respect to the FTX DM Preference Action.  The Celsius Litigation Administrator reserves the right to bring additional actions in connection with its Proofs of Claim in this Court at a later date, or to seek additional relief.

estates, including certain preference actions that relate to the Customer Transfers (as defined below) and the transfer of assets from Earn accounts to Custody accounts. The statute of limitations with respect to such actions expires on July 13, 2024. Accordingly, in the coming month, the Celsius Litigation Administrator expects to initiate thousands of preference actions against initial and subsequent transferees in the NY Celsius Bankruptcy Court.

### A. The Earn and Custody Programs

10.     Prior to the Celsius Petition Date, Celsius's primary offering was the "Earn" program ("Earn Program"). The Earn Program allowed users to place digital assets on the Celsius platform in return for "rewards." *See* Ehrler Declaration at ¶ 9. Celsius's terms of use provided that when account holders transferred assets to Celsius as part of the Earn Program, they transferred ownership of those assets to Celsius. Specifically, the terms of use stated that Celsius held "all right and title to such Eligible Digital Assets, including ownership rights" in such assets. *Id.* Pursuant to the terms of use, Celsius could "pledge, re-pledge, hypothecate, rehypothecate, sell, lend, or otherwise transfer" such assets "with all attendant rights of ownership" and "use or invest" the assets in Celsius's full discretion. *Id.* In other words, the terms of use unambiguously transfer title and ownership of digital assets deposited into Earn Program accounts from users to Celsius, and the NY Celsius Bankruptcy Court so found.[5]

11.     On April 15, 2022, in response to certain regulatory actions, Celsius launched the "Custody" program ("Custody Program") for customers in certain U.S. states. *See* Ehrler Declaration at ¶ 11. The Custody Program provided for accounts that were unlike the Earn

---

[5]     During the Celsius Bankruptcy, the NY Celsius Bankruptcy Court addressed whether deposits in "Earn" accounts constitute assets of Celsius's estates. On January 4, 2023, following a multi-day hearing and extensive briefing from the parties in interest, the NY Bankruptcy Court issued a ruling (the "Earn Ruling") determining that when assets were deposited in "Earn" accounts, "the cryptocurrency assets became Celsius's property." *In re Celsius Network LLC*, 647 B.R. 631, 637 (Bankr. S.D.N.Y. 2023); *see also* Ehrler Declaration, Ex. A.

Program in that customers retained title to the assets but could not generate rewards on their custody account balances.  Specifically, the terms of services provided that "[t]itle . . . shall at all times remain with [the customer] and not transfer to Celsius." *Id.*  Under these terms, Celsius was not authorized to make investments using the deposited custody assets, and customers no longer received interest payments in return for their custody deposits.[6]

12.     Funds that were already held in Earn Program accounts were allowed to remain in the Earn Program regardless of accreditation status, however on and after April 15, 2022, only international-based users and U.S. accredited users could transfer funds to Earn accounts.  *Id.*

13.     The Custody Program was created within the Celsius Preference Period.  *Id.* Accordingly, all transfers of assets from accounts in the Earn Program to accounts in the Custody Program and the accompanying transfer of title from Celsius to customers also occurred during the Celsius Preference Period and are avoidable, and the NY Celsius Bankruptcy Court acknowledged that Celsius's *prima facie* case for their avoidance was undisputed.  *See* Dec. 7, 2022 Hr'g Tr. 195:11–18, *In re Celsius Network LLC*, Case No. 22-10964 (Bankr. S.D.N.Y. Jul. 13, 2022), D.I. 1684.  Additionally, any later recipients of property conveyed in those transfers after the property left the Celsius platform, including by FTX, necessarily are subsequent transferees under Section 550 of the Bankruptcy Code.

---

[6]     During the Celsius Bankruptcy, the NY Celsius Bankruptcy Court addressed whether deposits in "Custody" accounts were assets of the customers as opposed to Celsius.  On December 7, 2022, the NY Celsius Bankruptcy Court issued a bench ruling that digital assets in the "Custody" accounts are not property of Celsius's estates.  *See* Dec. 7, 2022 Hr'g Tr. 62:6-13, 219:11-14, *In re Celsius Network LLC*, Case No. 22-10964 (Bankr. S.D.N.Y. Jul. 13, 2022), D.I. 1684; *see also* Ehrler Declaration, Ex. B.  The NY Bankruptcy Court subsequently entered an order permitting Celsius to release to customers, among other things, digital assets that were only ever in the Custody Program and transfers of digital assets to the Custody Program made in the ninety days preceding the Celsius Petition Date when such transfers were, in the aggregate, less than $7,575 at the time of the transfers.  *See In re Celsius Network LLC*, Case No. 22-10964 (Bankr. S.D.N.Y. Jul. 13, 2022), D.I. 1767.

**B.  The Customer Transfers**

14.     On June 12, 2022, in response to customer withdrawal demands and increasing volatility in the cryptocurrency markets, Celsius instituted a "pause" of account withdrawals and transfers, regardless of whether the assets were held in "Earn" accounts, "Custody" accounts, or other accounts.  *See* Ehrler Declaration at ¶ 13.  Prior to that pause, and during the Celsius Preference Period, certain Celsius customers received transfers off the Celsius platform through withdrawals.  Certain of Celsius's assets were withdrawn from "Earn" or "Custody" customer accounts directly to wallets believed to be associated with the FTX DM cryptocurrency exchange platform, and other assets were transferred after initially being transferred to other locations (together, the "Customer Transfers").  *Id*.  Many of the initial transferees of these Customer Transfers are classified as holders of a DM Customer Entitlement Claim or DM Excess Claim as set forth in the Global Settlement.[7]  *See* D.I. 141; Ehrler Declaration at ¶ 20.

15.     Based in part on the Earn Ruling, transfers from an "Earn" account off the Celsius platform during the Celsius Preference Period and transfers from "Earn" to "Custody" accounts during the Celsius Preference Period constitute avoidable preferences, and the subsequent recipients of such transfers from the initial transferee constitute subsequent transferees, as defined in Section 550 of the Bankruptcy Code.

16.     A schedule attached as Exhibit C to the Ehrler Declaration (the "Subsequent Transfers Schedule") identifies the (i) initial transferees of such Customer Transfers, (ii) net amounts of avoidable transfers made to each initial transferee (the "Transfer Amount"), and (iii) total amount of assets that were transferred from the initial transferee to FTX DM.[8]  Ehrler

---

[7]     The Celsius Litigation Administrator intends to work cooperatively with the FTX Debtor's estates to confirm the appropriate subsequent transferee—FTX DM or a Chapter 11 Debtor.

[8]     The Subsequent Transfers Schedule includes all identified claims against an FTX entity as a subsequent transferee which may be attributable to FTX DM or an entity in the FTX Trading Ltd. *et al.* chapter 11 proceedings (the

Declaration at ¶ 14.  A transferee's preference exposure in the Subsequent Transfers Schedule is primarily based upon deposits and withdrawals from an Earn account to an off-platform wallet (in the case of international customers), transfers between Earn and Custody accounts (in the case of U.S. based customers), and other transactions as set forth in the Celsius disclosure statement.  *See, e.g.*, *In re Celsius Network LLC*, Case No. 22-10964 (Bankr. S.D.N.Y. Jul. 13, 2022), D.I. 3332 at 76-81.  As calculated solely for purposes of this schedule, this Transfer Amount represents the estimated value, as of May 7, 2024, of assets transferred from Celsius's estates net of new value (e.g. deposits) received and potential settlements entered.  Ehrler Declaration at ¶ 15.

17.    During the Celsius Bankruptcy, a settlement was offered to all customers to resolve their preference exposure related to their Custody account balance ("Custody Preference Settlement").  *Id.* at ¶ 16.  Customers who accepted the Custody Preference Settlement agreed to resolve preference exposure related to their Custody assets that remained on the Celsius platform. To the extent customers accepted the Custody Preference Settlement, their preference liability was estimated by excluding those Custody assets that were resolved in such settlement.  *Id.*

18.    During the Celsius Bankruptcy and after the effective date of the Celsius Plan, offers to settle remaining customer preference liability were provided to Celsius account holders ("Customer Preference Settlements").  None of the transferees included on the Subsequent Transfers Schedule are known to have accepted the Customer Preference Settlements.  *Id.* at ¶ 17.

---

"Chapter 11 Debtors").  Based on his investigation (which remains ongoing), the Celsius Litigation Administrator cannot confirm at this time whether FTX wallets that received the avoidable transfers belong to FTX DM or the Chapter 11 Debtors.  Accordingly, the Subsequent Transfers Schedule includes some claims that may not ultimately be attributable to FTX DM and will continue, instead, against one of the Chapter 11 Debtors.  The Motion only requests authority to lift the automatic stay with respect to FTX DM.  A complementary motion requesting the same relief with respect to the Chapter 11 Debtors was filed contemporaneously herewith in the chapter 11 proceeding.  The Celsius Litigation Administrator intends to take necessary discovery following the initiation of Preference Actions in order to finalize the Subsequent Transfers Schedule and attribute FTX wallets against appropriate entities.

## JURISDICTION

19.     The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Celsius Litigation Administrator confirms its consent, pursuant to Local Rule (as defined herein) 9013-1(f), to the entry of a final order or judgment by the Court in connection with this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. § 1410.

20.     The statutory and other predicates for the relief sought in this Motion are Sections 362(d) and 1520 of the Bankruptcy Code, Rule 4001(a)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## RELIEF REQUESTED

21.     By this Motion, the Celsius Litigation Administrator requests entry of the Proposed Order, substantially in the form attached as **Exhibit A**, granting relief from the automatic stay to authorize the Celsius Litigation Administrator to commence, adjudicate, and liquidate the FTX DM Preference Action to final judgment in the NY Celsius Bankruptcy Court.

## BASIS FOR RELIEF

22.     Section 1520 of the Bankruptcy Code provides that recognizing a liquidation proceeding as a foreign main proceeding, as has occurred here pursuant to the *Order Granting Recognition of Foreign Main Proceeding and Certain Related Relief*, D.I. 129, recognizing the Bahamian Provisional Liquidation and granting the protection afforded to foreign main

proceedings under Section 1520, trigger and impose the automatic stay of Section 362. *In re ABC Learning Centres Ltd.*, 445 B.R. 318, 337 (Bankr. D. Del. 2010), *on reconsideration in part*, 445 B.R. 318 (Bankr. D. Del. Jan. 21, 2011), *aff'd* 728 F.3d 301 (3d Cir. 2013); *In re Manley Toys Ltd.*, 2020 WL 1580244, at *3 (Bankr. D.N.J. Mar. 31, 2020). "The procedure for obtaining a court order for relief from the U.S. automatic stay under subsections (d) through (g) of [Section] 362 applies in a chapter 15 case." *Manley Toys*, 2020 WL 1580244, at *5 (internal citation omitted). Here, the imposition of the automatic stay under Section 362, as with other cases, operates as a stay applicable to all entities, of any act to obtain possession of or exercise control over property of the estate or to collect, assess, or recover a claim against the debtor that arose before the commencement of the chapter 15 case. 11 U.S.C. §§ 362(a)(3), (6). Notwithstanding this prohibition, this Court "shall grant relief from the stay . . . for cause" on a party in interest's request and after notice and a hearing. 11 U.S.C. § 362(d)(1). Section 362(g) places an initial burden on the moving party to establish its *prima facie* case for relief from the automatic stay which must then be rebutted by the party opposing such relief. *See Izzarelli v. Rexene (In re Rexene Prods. Co.)*, 141 B.R. 574, 577 (Bankr. D. Del. 1992); *In re Eatman*, 182 B.R. 386, 390 (Bankr. S.D.N.Y. 1995) ("[T]he movant must [] make a prima facie showing that it is entitled to the relief that it seeks."). A *prima facie* case requires a showing by the movant of a factual and legal right to the relief that it seeks. *In re Eatman*¸ 182 B.R. at 390 (*citing In re Elmira Litho, Inc.*¸174 B.R. 892, 900 (Bankr. S.D.N.Y. 1994)); *see also In re Planned Systems, Inc.*, 78 B.R. 852, 859 (Bankr. S.D. Ohio 1987). "After the moving party establishes a *prima facie* case, the

burden of producing evidence, as well as the ultimate burden of proof, *i.e.*, risk of non-persuasion, shifts to the debtor." *In re Planned Sys., Inc.*, 78 B.R. at 859.

23.    Because the term "cause" is not defined in Section 362(d) of the Bankruptcy Code, courts "conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *In re Trump Entm't Resorts, Inc.*, 526 B.R. 116, 120 (Bankr. D. Del. 2015); *see also In re F-Squared Inv. Mgmt., LLC*, 546 B.R. 538, 548 (Bankr. D. Del.  2016) (cause is a "flexible concept, determined on a case-by-case basis."); *In re The SCO Grp., Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007) ("[C]ourts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay."); *ABC Learning Centres.*, 445 B.R. at 337 (same).  As the Third Circuit has stated, whether cause exists to lift the automatic stay is "based on the totality of the circumstances in each particular case."  *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997).

24.    The Court "has the flexibility and the discretion to fashion the relief to the circumstances of the particular matter."  *In re Patriot Contracting Corp.*, Case No. 05-33190 (DHS), 2006 Bankr. LEXIS 4133, at *6 (Bankr. D.N.J. May 31, 2006); *see also Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc. (In re Mid-Atlantic Handling Sys., LLC)*, 304 B.R. 111, 130 (Bankr. D.N.J. 2003) ("A bankruptcy court is granted wide discretion to determine whether to lift an automatic stay for cause.").

25.    To determine whether cause exists to grant relief from the automatic stay, courts in the Third Circuit look to the three factors that compromise the *Rexene* balancing test: "1. Whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit; 2. Whether the hardship to the non-bankrupt party by maintenance of the stay

considerably outweighs the hardship to the debtor; and 3. The probability of the creditor prevailing on the merits." *Trump Entm't Resorts, Inc.*, 526 B.R. at 120–121; *see also In re Cont'l Airlines, Inc.*, 152 B.R. 420, 424 (D. Del. 1993); *In re Rexene Prods. Co.*, 141 B.R. at 576; *ABC Learning Centres*, 445 B.R. at 337.   To demonstrate that cause exists under Section 362(d)(1), "the party seeking relief from the stay must show that 'the balance of hardships from not obtaining relief tips significantly in its favor.'"   *Atl. Marine, Inc. v. Am. Classic Voyages, Co. (In re Am. Classic Voyages, Co.)*, 298 B.R. 222, 225 (D. Del. 2003) (internal citation omitted).

26.   The Third Circuit has expressly recognized that the legislative history of Section 362(d)(1) provides "[i]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere." *Wilson*, 116 F.3d at 91; *see also In re Tribune Co.*, 418 B.R. 116, 126 (Bankr. D. Del. 2009) (internal citation omitted).   This legislative history makes clear that cause may be established by a single factor such as "a desire to permit an action to proceed in another tribunal," or "lack of any connection with or interference with the pending bankruptcy case."   *Rexene Prods Co.*, 141 B.R. at 576 (quoting H.R. Rep. No. 95-595, 95th Cong., 1st Sess., 343-344 (1977)).   In fact, the mere existence of a more appropriate forum than the bankruptcy court constitutes cause for relief under Section 362(d).   *See Mother African Union Methodist Church v. Conference of AUFCMP Church (In re Conference of African Union First Colored Methodist Protestant Church)*, 184 B.R. 207, 218 (Bankr. D. Del. 1995).

27.   Some courts, under remarkably similar "dueling debtor" scenarios, have found it appropriate to lift the automatic stay to allow a debtor in a separate bankruptcy case to prosecute its preference adversary proceeding in the court where its own case was pending.   *See In re Shared*

13

*Techs. Cellular, Inc.*, 293 B.R. 89 (D. Conn. 2003) (on appeal, the district court found that the bankruptcy court's modification of the automatic stay to permit a debtor in a separate bankruptcy to prosecute preference claims where its bankruptcy case was pending constitutes an appropriate exercise of the court's broad powers under Section 362). In *Shared Technologies*, the bankruptcy court lifted the stay for the purpose of allowing the movant to proceed in seeking a judgment to recover preferential transfers in an adversary proceeding filed in its own bankruptcy action (*In re Shared Techs.*, 293 B.R at 94)—which is similar to the request made by the Celsius Litigation Administrator here.[9]

28.     The reasoning of the court in *Shared Technologies* applies here, and "cause" exists pursuant to Section 362(d) of the Bankruptcy Code to lift the automatic stay to permit the commencement and prosecution of the FTX DM Preference Action to final judgment in the NY Celsius Bankruptcy Court.

### A.  Lifting the Automatic Stay Does Not Prejudice FTX DM

29.     In determining "whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit," courts look to the purpose of the automatic stay:

> to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor.

---

[9]   In *In re Voyager Digital Holdings, Inc.*, Celsius filed a motion for leave to file a late proof of claim and lift the automatic stay to commence a preference action against Voyager Digital in Celsius's case in that same court. Although the lift stay issue was not adjudicated, Bankruptcy Judge Wiles noted that "to the extent that the [Voyager debtors] have implied that they wish to make arguments about the ["Custody" accounts] and whether they were or were not property and whether prior transfers to the ["Custody" accounts] should be treated as preferences, those are issues Judge Glenn [in the Celsius Bankruptcy] is going to be deciding as to many customers, and if . . . those are going to be issues, or were to be issues in opposition to a claim . . . then there is no way I would entertain a separate litigation of those issues in my Court." *See In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW), D.I. 921, Jan. 24, 2023 Hr'g Tr., 103:21–104:9 (Bankr. S.D.N.Y. Jan. 24, 2023).

*In re Tribune Co.*, 418 B.R. at 126–127 (internal quotes and citations omitted).  Although this is a very fact-specific inquiry, "[t]he most important factor in determining whether to grant relief from the automatic stay to permit litigation to proceed against a debtor in another forum is the effect of such litigation on the administration of the estate."  *In re W.R. Grace & Co.*, 2007 WL 1129170, at *2 n.7 (Bankr. D. Del. Apr. 13, 2007).

30.     Prior to the statute of limitations deadline, the Celsius Litigation Administrator will initiate Non-FTX DM Preference Actions in the NY Celsius Bankruptcy Court against the initial transferees who were party to the Customer Transfers.  As noted above, certain of these initial transferees are also holders of a DM Customer Entitlement Claim and/or a DM Excess Claim under the DM Liquidation.  Therefore, to the extent that FTX DM is determined to be a subsequent transferee, redirecting DM Liquidation distributions to Celsius, instead of a DM Customer Entitlement Claim and/or DM Excess Claim claimant who was an initial transferee of avoidable transfers of Celsius's property, is warranted in the amount of the preference claims.  Because the FTX DM Preference Action seeks only to redirect distributions already contemplated by the DM Liquidation, the general policy underlying the automatic stay of protecting a bankruptcy estate from being "whittled away by creditors' lawsuits" does not apply.  *In re Cont'l Airlines, Inc.*, 152 B.R. at 426.

31.     The Celsius Litigation Administrator has tailored the relief sought herein to ensure that there will be no diminution of FTX DM's estate as a result of the FTX DM Preference Action. Among other things, with respect to this issue, the Proposed Order specifically lifts the automatic stay with respect to the FTX DM Preference Action only for the limited purpose of redirecting distributions on account of holders of DM Customer Entitlement Claims and/or DM Excess Claims who were initial transferees of avoidable preferences, and further provides that no distributions by

FTX DM on account of the FTX DM Preference Action will exceed the amounts otherwise payable to such DM Customer Entitlement Claim and/or DM Excess Claim claimants under the DM Liquidation.[10]  Accordingly, FTX DM would not be prejudiced if the automatic stay was modified with respect to the FTX DM Preference Action.

32.    In addition, FTX's creditors will not be prejudiced if the FTX DM Preference Action is adjudicated in the NY Celsius Bankruptcy Court.  Claimants who are not parties to the Preference Actions in the Celsius Bankruptcy will be completely unaffected, as their distributions under the DM Liquidation will remain unchanged.  Those claimants who are parties to the Preference Actions also will be no worse off.  As initial transferees of preferential transfers from Celsius, actions against such claimants are Non-FTX DM Preference Actions unaffected by the automatic stay.  These claimants will be subject to preference actions by Celsius whether or not FTX DM is joined to those proceedings.  The FTX DM Preference Action would simply allow the Celsius Litigation Administrator to redirect distributions made on account of DM Customer Entitlement Claims or DM Excess Claims under the DM Liquidation.  To the extent the FTX DM Preference Action redirects distributions on account of a DM Customer Entitlement Claim or DM Excess Claim, the result follows because those claimants were never entitled to those underlying assets under the law of the case in the Celsius Bankruptcy.  Accordingly, lifting the automatic stay to allow the Celsius Litigation Administrator to pursue the FTX DM Preference Action would not prejudice any creditors of FTX DM.

---

[10]    Any distributions to be made to DM Customer Entitlement Claim and/or DM Excess Claim claimants who are subject to the Preferences Actions should be delayed until the Preference Actions are resolved and the distributions related thereto are properly directed to Celsius or the DM Customer Entitlement Claim and DM Excess Claim claimants, as applicable.

**B. Denying the Motion Would Greatly Prejudice the Celsius Litigation Administrator and Celsius's Creditors.**

33.    The second factor—the hardship to the Celsius Litigation Administrator and Celsius's creditors if the automatic stay is not lifted—considerably outweighs any hypothetical hardship to FTX DM in lifting the stay.

34.    Absent an order lifting the automatic stay, the Celsius Litigation Administrator would need to litigate substantially similar Preference Actions in two separate courts—the Non-FTX DM Preference Actions in the NY Celsius Bankruptcy Court and the FTX DM Preference Action in this Court—even though these actions involve the same underlying facts and circumstances.  Separating related proceedings across two different forums will drastically increase the time and costs associated with adjudicating and liquidating these preference claims and will serve no logical purpose.  The Celsius Litigation Administrator is already operating on a limited budget, and any additional expenses incurred in redundant proceedings will directly diminish the recoveries for Celsius's creditors whose claims are not being paid in full under the confirmed Celsius Plan.

35.    The Celsius Litigation Administrator also has an interest in determining the Preference Actions in one forum.  The resolution of common issues of fact and law arising in any one Preference Action is important to the process.  Indeed, to recover from the subsequent transferee, Celsius must show that the initial transfer is avoidable and that the defendant is a subsequent transferee of the initial transferee.  Dividing the FTX DM Preference Action and Non-FTX DM Preference Actions across multiple jurisdictions risks the development of conflicting or inconsistent rulings.

36.    Failing to lift the automatic stay with respect to FTX DM Preference Action will further prejudice the Celsius Litigation Administrator by hindering his ability to recover on

preference claims.  Lifting the stay to permit the Celsius Litigation Administrator to prosecute the FTX DM Preference Action against FTX DM as a subsequent transferee along with the actions against initial transferees will allow the Celsius Litigation Administrator to recover preference claims in circumstances where, among others, an initial transferee may be beyond the practical reach of the NY Celsius Bankruptcy Court.  For those initial transferees who are also holders of DM Customer Entitlement Claims and/or DM Excess Claims under the contemplated DM Liquidation, redirecting distributions is the fastest and most efficient way to ensure Celsius is made whole without any prejudice to FTX DM.

**C.  The Celsius Litigation Administrator Likely Will Succeed on the Merits.**

37.     The third factor, whether the creditor has a probability of prevailing on the merits, weighs heavily in favor of lifting the stay.  In the lift stay context, this element "merely requires a showing that [the movant's] claim is not frivolous." *Levitz Furniture Inc. v. T. Rowe Price Recovery Fund L.P. (In re Levitz Furniture Inc.)*, 267 B.R. 516, 523 (Bankr. D. Del. 2000).  Thus, for this factor, the Celsius Litigation Administrator's burden to show probability of success is "very slight." *In re Rexene Prods. Co.*, 141 B.R. at 578 ("[o]nly strong defenses . . . can prevent a bankruptcy court" from lifting the automatic stay) (internal citations omitted); *see also In re Tribune Co.*, 418 B.R. at 129 (the introduction into evidence of a declaration containing dates and potential witnesses supporting a claim was sufficient to meet this prong); *In re Cont'l Airlines, Inc.*, 152 B.R. at 426 ("Even a slight probability on the merits may be sufficient to support lifting an automatic stay in an appropriate case.").

38.     As described more fully in the Draft Complaint and the Ehrler Declaration, (a) the Customer Transfers occurred during the Celsius Preference Period; (b) each of the Customer Transfers was a transfer of an interest of Celsius's property; (c) the Customer Transfers were made

18

for the benefit of the initial transferee while Celsius was insolvent; and (d) each of the transfers enabled the initial customer transferees to receive more than they would have received if (i) the Celsius Bankruptcy were a case under chapter 7 of the Bankruptcy Code; and (ii) the Customer Transfers had not been made.  *See* Ex. B; Ehrler Declaration at ¶ 19.  For the FTX DM Preference Action against FTX DM, FTX DM was a subsequent transferee of the avoidable transfer.[11]  *See* Ex. B; Ehrler Declaration at ¶¶ 7, 14.

39.    These facts, considered in conjunction with the NY Celsius Bankruptcy Court's Earn Ruling that assets held in "Earn" accounts were the property of Celsius, demonstrate that Celsius has a colorable basis to establish a *prima facie* case to avoid the preferences pursuant to Sections 547 and 550 of the Bankruptcy Code.  Any defenses may be properly addressed by the NY Celsius Bankruptcy Court in a Preference Action.

### D.  Maintaining All Preference Actions, Including the FTX DM Preference Action, in the NY Celsius Bankruptcy Court Will Serve Judicial Economy and Facilitate Expeditious Resolutions.

40.    In addition to satisfying the *Rexene* balancing test, lifting the stay would also serve judicial economy.  The FTX DM Preference Action would be most appropriately and efficiently litigated in the NY Celsius Bankruptcy Court where core legal and factual issues likely to be raised in connection with the FTX DM Preference Action will also be at issue in thousands of other Preference Actions brought by the Celsius Litigation Administrator.  Duplicative litigation would impose a burden on not only the Celsius Litigation Administrator, but also the courts.  *See In re Rexene Prods. Co.*, 141 B.R. at 576.

---

[11]    Based on available information, the Celsius Litigation Administrator cannot confirm whether an FTX wallet is attributable to FTX DM or one or multiple of the Chapter 11 Debtors.  This Motion only requests authority to lift the automatic stay with respect to FTX DM.  A complementary motion requesting the same relief with respect to the Chapter 11 Debtors was filed contemporaneously in the chapter 11 proceeding.

41.     The NY Celsius Bankruptcy Court, which has presided over the Celsius Bankruptcy for over twenty months and gained specialized knowledge and experience regarding Celsius, is the most practical forum to adjudicate the Preference Actions.  *See In re Schaffer*, 597 B.R. 777, 795 (Bankr. E.D. Pa. 2019) ("[L]itigating in the bankruptcy forum which has no familiarity with the underlying substantive claims would likely be more burdensome to the [d]ebtor and the estate than concluding litigation in [another court]").

42.     Adjudicating all of the Preference Actions in a common forum would eliminate the risk of inconsistent rulings such as those related to the application of the NY Celsius Bankruptcy Court's Earn Ruling to the Preference Actions.  The determination of such matters that are central to the Celsius Bankruptcy should be left to the NY Bankruptcy Court.

43.     Finally, it is undisputed that the NY Celsius Bankruptcy Court has jurisdiction to hear all of the Preference Actions, whereas this Court's jurisdiction is limited to the FTX DM Preference Action.  The Non-FTX DM Preference Actions will necessarily proceed in the NY Celsius Bankruptcy Court whether or not the stay here is lifted.  Simply put, it would be practical and less burdensome on all parties in interest, including this Court, to lift the automatic stay and permit the Preference Actions, including the FTX DM Preference Action that relies on the same or similar facts and circumstances, to be heard and determined by the NY Celsius Bankruptcy Court.

**WAIVER OF STAY UNDER BANKRUPTCY RULE 4001(a)(3)**

44.     Pursuant to Bankruptcy Rule 4001(a)(3), an order granting relief from the automatic stay is "stayed until the expiration of fourteen (14) days after the entry of the order, unless the Court orders otherwise." Fed. R. Bankr. P. 4001(a)(3).  As previously noted, the Celsius Litigation Administrator must file any Preference Actions, including the FTX DM Preference

Action, no later than July 13, 2024.  Given the nature of the relief requested herein and, in particular, the impending statute of limitations, the Celsius Litigation Administrator submits that to the extent applicable it is appropriate that the 14-day stay under Bankruptcy Rule 4001(a)(3) be waived.

## **NOTICE**

45.     Notice of this Motion will be provided to (a) the U.S. Trustee; (b) counsel to FTX DM; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for the District of Delaware; and (g) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, no other or further notice need be given.

## **CONCLUSION**

46.     WHEREFORE, the Celsius Litigation Administrator respectfully request that this Court enter the Proposed Order, substantially in the form attached as **Exhibit A**, granting the relief requested herein and granting such other and further relief as the Court may deem just and proper.

*[Remainder of Page Intentionally Left Blank]*

Dated:  June 5, 2024
        Wilmington, Delaware          **COLE SCHOTZ, P.C.**

                                      /s/ *Justin R. Alberto*
                                      Justin R. Alberto (No. 5126)
                                      Patrick J. Reilley (No. 4451)
                                      Melissa M. Hartlipp (No. 7063)
                                      500 Delaware Avenue, Suite 1410
                                      Wilmington, DE 19801
                                      Telephone: (302) 652-3131
                                      Facsimile: (302) 652-3117
                                      Email:  jalberto@coleschotz.com
                                              preilley@coleschotz.com
                                              mhartlipp@coleschotz.com
                                      -and-
                                      **PRYOR CASHMAN LLP**
                                      Seth H. Lieberman, Esq.
                                      Richard Levy, Jr., Esq.
                                      Andrew S. Richmond, Esq.
                                      7 Times Square, 40th Floor
                                      New York, New York 10036
                                      Telephone: (212) 421-4100
                                      Facsimile: (212) 326-0806
                                      Email: slieberman@pryorcashman.com
                                              rlevy@pryorcashman.com
                                              arichmond@pryorcashman.com

                                      *Counsel to Mohsin Y. Meghji, as Litigation*
                                      *Administrator for Celsius Network, LLC, et al.*