**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re | Chapter 15 |
| FTX DIGITAL MARKETS LTD.,[1] | Case No. 22-11217 (JTD) |
| Debtor in a Foreign Proceeding. | Re: D.I. 155 |

## THE FOREIGN REPRESENTATIVES' OBJECTION TO THE CELSIUS LITIGATION ADMINISTRATOR'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Brian C. Simms KC, Kevin G. Cambridge, and Peter Greaves (the "Foreign Representatives"), in their capacity as joint official liquidators, acting as agents and without personal liability, and foreign representatives of FTX Digital Markets Ltd. ("FTX DM"), in official liquidation in the Supreme Court of the Commonwealth of The Bahamas (the "Bahamas Official Liquidation") pursuant to the Companies (Winding Up Amendment) Act, 2011 (the "CWUA Act") in the Supreme Court of The Bahamas (the "Bahamas Supreme Court"), by and through their undersigned counsel, hereby submit this objection (the "Objection") to the *Celsius Litigation Administrator's Motion for Relief from the Automatic Stay* [D.I. 155] (the "Motion" or "Mot.").[2] In support of this Objection, the Foreign Representatives submit the *Declaration of Peter Greaves* (the "Greaves Declaration") and the *Declaration of Sophia Rolle-Kapousouzoglou* (the "Rolle-Kapousouzoglou Declaration") each filed contemporaneously herewith, and respectfully state as follows:

---

[1]    FTX Digital Markets Ltd. (in Official Liquidation) was incorporated in the Commonwealth of The Bahamas as an International Business Company, registered number 207269B.

[2]    Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

**PRELIMINARY STATEMENT**

1.      At its core, the Motion seeks to subvert the jurisdiction of the Bahamas Supreme Court by asking this Court (and not the Bahamas Supreme Court) for permission to commence and prosecute an adversary proceeding (the "Proposed FTX DM Preference Adversary") against FTX DM in Celsius' chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York – a jurisdiction with no authority to grant the relief the Celsius Litigation Administrator ultimately seeks: distributions from the Bahamas Official Liquidation. On February 15, 2023, this Court recognized the Bahamas Official Liquidation as FTX DM's foreign main proceeding and implemented a stay under sections 1520 and 362 of the Bankruptcy Code. That stay protects FTX DM and its assets within the territorial jurisdiction of the United States from creditor actions in the United States. Such relief was granted with the express purpose of aiding the existing Bahamas Official Liquidation and complements the stay implemented in The Bahamas, which protects all of FTX DM's assets. Therefore, it is inappropriate to proceed with the Proposed FTX DM Preference Adversary and pursue approximately $370 million worth of avoidance actions at this juncture. Instead, the Celsius Litigation Administrator first should seek permission from the Bahamas Supreme Court, the sole arbiter of whether the Celsius Litigation Administrator may pursue the causes of action in the Proposed Complaint attached to the Motion.

2.      For this reason, the Court should deny the Motion based on comity considerations alone. FTX DM commenced this chapter 15 case so this Court could aid the Bahamas Supreme Court in administering the plenary Bahamas Official Liquidation in accordance with principles of international comity, which the Third Circuit ratified as recently as this year. *See Vertiv, Inc. v. Wayne Burt PTE, Ltd.*, 92 F.4th 169, 178 (3d Cir. 2024) ("Chapter 15, like its predecessor, favors extending comity to foreign insolvency proceedings"). Accordingly, the Foreign Representatives

obtained entry of the Recognition Order which, to paraphrase, established The Bahamas as FTX DM's "home" jurisdiction.

3.     As of the date hereof, the Celsius Litigation Administrator has not sought leave from the Bahamas Supreme Court to prosecute either this Motion or the causes of action asserted in the Proposed Complaint.  The Motion is a brazen attempt to use FTX DM's chapter 15 case to circumvent the Bahamas Official Liquidation and to shortcut any procedural hurdles that might be inconvenient for the Celsius Litigation Administrator.  Ironically, the relief sought in the Motion is effectively futile. FTX DM has only limited and contingent assets within the jurisdiction of the United States, and in any event, no cause of action against FTX DM will be recognized in the Bahamas (where nearly all FTX DM's assets are located) without leave from the Bahamas Supreme Court.  Thus, even if this Court granted the Celsius Litigation Administrator's Motion, the relief would, at best, fail to provide a pathway to recovery on account of the Celsius Litigation Administrator's asserted claims and, at worst, risk giving rise to competing orders from this Court and the Bahamas Supreme Court. This is precisely the type of harmful conflict that chapter 15 was designed to prevent.

4.     In any event, the Celsius Litigation Administrator has failed to establish any need, let alone "cause," to lift the chapter 15 stay with respect to FTX DM. During the last eight days, the Celsius Litigation Administrator has elected to file thousands of adversary complaints in the Celsius chapter 11 cases against the Initial Transferees, seeking to avoid and recover preferential transfers under sections 547 and 550 of the Bankruptcy Code, many of which the Foreign Representatives have identified as the Initial Transferees identified in relation to this Motion. The Celsius Litigation Administrator has not alleged that FTX DM had any involvement in the underlying 538 Customer Transfers that are the subject of these complaints.  Nor has the Celsius

Litigation Administrator articulated why he would face undue hardship by litigating his preference claims against the Initial Transferees to conclusion or settling those claims first, before prosecuting any action against FTX DM on a subsequent-transferee theory.  Moreover, the Celsius Litigation Administrator has conceded that FTX DM may not be the appropriate defendant, and even if FTX DM is established as the correct defendant, the Celsius Litigation Administrator has one year after the avoidance of any preferential transfer against the Initial Transferees to commence an action to recover the transfer under section 550(f) of the Bankruptcy Code – including against any purported subsequent transferee.

5.     The appropriate sequencing of the Celsius Litigation Administrator's actions – with actions against the Initial Transferees preceding any action against FTX DM as a purported subsequent transferee would be virtually certain to narrow the scope of disputed issues, avoid wasteful and duplicative litigation and promote judicial economy. Indeed, any such deviation from this appropriate and efficient sequencing now would be a major distraction from the unique and highly complex dual-venue claims administration process that the Chapter 11 Debtors and JOLs have been working tirelessly to finalize. Other than generalized references to convenience and efficiency, the Motion fails to demonstrate why the Proposed Complaint could properly be filed and prosecuted in the Celsius chapter 11 cases rather than the Bahamas Official Liquidation before the Bahamas Supreme Court, or why the Celsius Litigation Administrator need not obtain leave from the Bahamas Supreme Court before prosecuting the Proposed Complaint. In sum, the Motion, if granted, would impose an extraordinary hardship on FTX DM and the Foreign Representatives with no discernible benefit to the Celsius Litigation Administrator.  For these reasons and the reasons discussed below, the Motion should be denied.

# BACKGROUND

## A.    General Background

6.      On November 10, 2022, the Securities Commission of The Bahamas filed a petition for the winding up of FTX DM with the Bahamas Supreme Court. Greaves Decl. ¶ 6. That same day, the Bahamas Supreme Court ordered a provisional liquidation proceeding for FTX DM and appointed Brian C. Simms, KC as provisional liquidator. *Id*. On November 14, 2022, the Bahamas Supreme Court also appointed Kevin G. Cambridge and Peter Greaves as joint provisional liquidators of FTX DM. *Id*.

7.      On November 11 and November 14, 2022, FTX Trading Ltd. and its affiliated debtors and debtors in possession (collectively, the "Chapter 11 Debtors") each commenced a voluntary chapter 11 case before this Court (collectively, the "Chapter 11 Cases").

8.      On November 15, 2022, the Foreign Representatives filed a chapter 15 petition on behalf of FTX DM for recognition of its provisional liquidation as a foreign main proceeding in the United States Bankruptcy Court for the Southern District of New York, which case was thereafter transferred to the United States Bankruptcy Court for the District of Delaware (this "Court"). *See Agreed Order to Transfer Venue* [D.I. 25]. On February 15, 2023, this Court entered an order recognizing FTX DM's provisional liquidation as a foreign main proceeding and the Foreign Representatives as foreign representatives of the FTX DM estate in the United States. *See Order Granting Recognition of Foreign Main Proceeding and Certain Related Relief* [D.I. 129] (the "Recognition Order").

9.      On November 10, 2023, the Bahamas Supreme Court granted an order that, among other things, (a) appointed the Foreign Representatives as joint official liquidators of FTX DM and (b) determined that FTX DM be wound up in accordance with the CWUA Act. Greaves Decl. ¶ 7.

**B.      The Bahamas Stay and Bahamas Bar Date**

10.      Similar to the Bankruptcy Code, §§ 192- 93 of the Bahamas Companies Act imposes a stay in connection with the Bahamas Official Liquidation, which extends to proceedings against the assets of the company in official liquidation (the "Bahamas Stay"). Rolle-Kapousouzoglou Decl. ¶ 7. The making of an order for winding-up by the court or the appointment of a provisional liquidator triggers an automatic stay of all suits, actions and other proceedings against FTX DM and its assets. Rolle-Kapousouzoglou Decl. ¶ 8. The Bahamas Stay applies to the continuation of any legal proceedings or the commencement of a new action in such circumstances may only be undertaken with the permission of the Bahamas Supreme Court. *Id*. A creditor or any other party must first apply to the Bahamas Supreme Court before commencing any proceeding against a company that is subject to a winding-up order. Rolle-Kapousouzoglou Decl. ¶ 9. And if such an application is not brought, the Bahamas Supreme Court may issue an order enjoining, staying or restraining such an action. Rolle-Kapousouzoglou Decl. ¶ 8. On November 10, 2022, the Bahamas Stay came into place upon the Bahamas Supreme Court's ordering of the provisional liquidation of FTX DM.  Rolle-Kapousouzoglou Decl. ¶ 10.

11.      August 16, 2024 is the bar date to submit proofs of debt in the Bahamas Official Liquidation. Greaves Decl. ¶ 8. As of the date of this Objection, neither the Celsius debtors nor the Celsius Litigation Administrator have filed a proof of debt in the Bahamas Official Liquidation. *Id.*

**C.      The Chapter 11 Bar Date and the Celsius Proofs of Claim**

12.      On May 19, 2023, this Court entered an order establishing June 30, 2023, at 4:00 p.m., as the general deadline for each person or entity holding a Non-Customer Claim or equity

interest to file a proof of claim or proof of interest, as applicable, against any of the Chapter 11 Debtors (the "General Non-Customer Bar Date"). *See* Case No. 22-11068 (JTD) [D.I. 1519].

13.     On June 29, 2023, Celsius filed a proof of claim against each of the 103 Chapter 11 Debtors (the "Celsius Proofs of Claim"). *See* Greaves Decl. Ex. A. Nothing about potential preference actions with respect to customer funds withdrawn from the Celsius platform are mentioned in the Celsius Proofs of Claim. Greaves Decl. ¶ 9. The Celsius Proofs of Claim are not asserted against FTX DM or the Foreign Representatives. *Id.* As noted above, none of the Celsius debtors nor the Celsius Litigation Administrator have filed any proofs of debt in the Bahamas Official Liquidation. Greaves Decl. ¶ 8.

### D.     The Global Settlement Agreement Between FTX DM and the Chapter 11 Debtors

14.     Prior to and upon the commencement of the Bahamas Official Liquidation and the Chapter 11 Cases, a myriad of disputed issues arose between FTX DM and the Chapter 11 Debtors, including with respect to the ownership of certain assets and obligation for certain liabilities.  On December 19, 2023, FTX DM and the Chapter 11 Debtors entered into the *Global Settlement Agreement* (the "GSA") which provides a framework for resolving all disputes between the parties and cooperation among FTX DM and the Chapter 11 Debtors. Greaves Decl. ¶ 10. [3]

15.     The GSA provides, among other things, that each customer of the FTX.com Exchange may irrevocably elect to have their Dotcom Customer Entitlement Claims administered in the Bahamas Official Liquidation rather than in the Chapter 11 Cases (such election, the "Bahamas Opt-In Election"). Greaves Decl. ¶ 11. The GSA states that only "Dotcom Customers" holding "FTX.com Customer Entitlement Claims" will be able to make the Bahamas Opt-In

---

[3]     A true and correct copy of the GSA is attached to the Greaves Declaration as Exhibit B.

Election.[4] The GSA defines "Dotcom Customers" as "any customer of record on the FTX.com Exchange at any time." GSA § 1.01.

16.     To prevent duplicative distributions, the GSA requires that customers making the Bahamas Opt-In Election must release their respective underlying Dotcom Customer Entitlement Claim against the Chapter 11 Debtors. Greaves Decl. ¶ 12. Such releases are implemented in the Chapter 11 Debtors' ballots and on the FTX DM proof of debt platform. *Id.*

17.     As part of the solicitation of the Chapter 11 Debtors' *Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtors Affiliates*, Case No. 22-11068 (JTD) [D.I. 19139] (the "Plan"), holders of FTX.com Customer Entitlement Claims will be able to exercise the Bahamas Opt-In Election and have all claims withdrawn with prejudice from the Chapter 11 Cases and administered, reconciled, valued, settled, adjudicated, resolved, and satisfied in the Bahamas Official Liquidation. GSA § 5.02(a).[5] If a holder of a FTX.com Customer Entitlement Claim properly makes the Bahamas Opt-In Election, such claim shall constitute a "DM Customer Entitlement Claim" eligible to participate in the Bahamas Official Liquidation. GSA § 1.01.

18.     The GSA also allocates certain property specifically to FTX DM (the "Stipulated DM Property").[6] Greaves Decl. ¶ 13. The only Stipulated DM Property located within the territorial jurisdiction of the United States are the funds held in FTX DM's Silvergate and

---

[4]     "Each Dotcom Customer may exercise the Opt-In Election either by election on its ballot in the Chapter 11 Cases or by executing and filing a proof of debt in the DM Liquidation." GSA § 5.02(a).

[5]     "FTX.com Customer Entitlement Claim" means any Claim of any kind or nature whatsoever (whether arising in law or equity, contract or tort, under the Bankruptcy Code, the Bahamas Code, federal or state law, rule or regulation, common law or otherwise) held by any Person against any of the Debtors or FTX DM to recover or that compensates such Person for the value of cash or Digital Assets credited to an FTX.com Exchange account in the name of such Person in accordance with the calculation procedures set forth in Section 5.03(d)(ii). GSA § 1.01. The definition of "FTX.com Customer Entitlement Claim" is intended by the Debtors and FTX DM to capture Holders of Class 5A Dotcom Entitlement Claims and Class 7A Dotcom Convenience Claims.

[6]     Exhibit C annexed to the GSA lists the "Stipulated DM Property."

Moonstone bank accounts. *Id*. These bank accounts have been seized by the United States Department of Justice and are currently subject to forfeiture proceedings now pending in the United States District Court for the Southern District of New York. *See United States' Notice of Asset Seizures* [D.I. 119]. Accordingly, FTX DM has only limited and contingent assets located in the United States, none of which are currently available for distribution through the Bahamas Official Liquidation. *Id*.

19.     On January 24, 2024, this Court entered the *Order Authorizing and Approving the Debtors' and FTX DM's Entry Into, and Performance of Their Obligations Under, (I) The Global Settlement Agreement and (II) the Loan Agreement and its attached Global Settlement Agreement* [D.I. 141], which authorized FTX DM and the Chapter 11 Debtors to enter into the GSA. The GSA will become finally effective by its terms when this Court confirms an Acceptable Plan (as defined in the GSA) in the Chapter 11 Cases. FTX DM and the Chapter 11 Debtors have been working tirelessly to finalize the Plan and related Disclosure Statement and Solicitation Materials and progress toward confirmation, which is currently scheduled to go forward in October 2024. Greaves Decl. ¶ 14.

20.     Time is of the essence in both the Bahamas Official Liquidation and the Chapter 11 Cases. Greaves Decl. ¶ 15. Plan effectiveness is a condition precedent to the undertakings of FTX DM and the Chapter 11 Debtors to pool assets—including the significant assets the ownership of which has been disputed by the parties—for distribution to FTX.com Exchange customers and other creditors and make coordinated distributions in the Bahamas Official Liquidation and the Chapter 11 Cases. *See Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Affiliated Debtors and Debtors-In-Possession*, Case No. 22-11068 [D.I. 19143]. This coordinated distribution arrangement will ensure that FTX.com Exchange

customers receive substantially identical relative distributions at substantially identical times in the Bahamas Official Liquidation and the Chapter 11 Cases. Greaves Decl. ¶ 15. FTX DM anticipates this process will require significant resources and attention in the coming months. *Id.* This Court has authorized Solicitation Packages to be mailed to voting creditors by July 10, 2024, and the deadline to make the Bahamas Opt-In Election as August 16, 2024. *See Order (I) Approving the Adequacy of the Disclosure Statement; (II) Approving Solicitation Packages; (III) Approving the Forms of Ballots; (IV) Establishing Voting, Solicitation and Tabulation Procedures; and (V) Establishing Notice and Objection Procedures for the Confirmation of the Plan*, Case No. 22-11068 [D.I. 19068]. The Chapter 11 Debtors have similarly remarked that "there still is work to be done" with respect to how to operationalize the Bahamas Opt-In Election because "nobody has quite done it this way before." *See* Case No. 22-11068, June 25, 2024 Hr'g Tr. at 10:20-24.  Thus, the specter of any litigation – particularly futile, wasteful, and premature litigation sought to be commenced by the Celsius Litigation Administrator – is an unnecessary distraction on the eve of the commencement of solicitation in the Bahamas Official Liquidation and the Chapter 11 Cases. Greaves Decl. ¶ 15.

**E.    The Celsius Litigation Administrator's Motion**

21.    On June 5, 2023, the Celsius Litigation Administrator filed the Motion, which requests entry of an order lifting the chapter 15 stay to permit the Celsius Litigation Administrator "to commence, adjudicate, and liquidate the Proposed FTX DM Preference Adversary to final judgment in the NY Celsius Bankruptcy Court." Mot. ¶ 21.

22.    The proposed complaint annexed to the Motion (the "<u>Proposed Complaint</u>") describes a "run on the bank" by Celsius's customers – the "<u>Initial Transferees</u>" – in the lead up to the Celsius debtors' chapter 11 filing. *See* Mot., Ex. B. The Proposed Complaint describes

"many" withdrawals made by the Initial Transferees, which "mov[ed] through the customers' fingers prior to any subsequent further movement of said assets to any other party, including FTX DM." Mot. ¶ 40. The Proposed Complaint alleges that the Celsius debtors transferred more than $500 million of assets to the Initial Transferees, as "calculated based upon deposits and withdrawals on or off of Celsius's platform or transfers between customer accounts." Mot. ¶ 42. The Proposed Complaint also asserts that all of these transfers are subject to avoidance as preferences under section 547 of the Bankruptcy Code.

23.    Notably, the Proposed Complaint does not allege that FTX DM had anything to do with any of these Initial Transfers – except that the assets subject to the initial Customer Transfers *may* have been put on the FTX DM exchange.[7]  In fact, the Celsius Liquidation Administrator does not even know whether FTX DM is the correct "subsequent transferee."  More specifically the Motion acknowledges that:

- only a subset of these initial Customer Transfers are relevant to the Proposed Complaint – those "alleged to have been subsequently transferred to FTX DM's platform by the customers" Mot. ¶ 43.
- "it may be determined that some of the initial transferees listed on Exhibit C to the Ehrler Declaration did not ultimately transfer assets to FTX DM" Mot. n. 3.
- "Based on his investigation (which remains ongoing) the Celsius Litigation Administrator cannot confirm at this time whether FTX wallets that received the avoidable transfers belong to FTX DM or the Chapter 11 Debtors." Mot. n. 8.

24.    The Proposed Complaint asserts only two causes of action against FTX DM: (a) one count under section 550 of the Bankruptcy Code seeking to recover the assets (or the equivalent value of the assets) that the Initial Transferees allegedly transferred to FTX DM; and

---

[7]    To be clear, FTX DM did not have its own independent cryptocurrency platform.  Ownership of the FTX.com cryptocurrency platform was disputed between FTX DM and the Chapter 11 Debtors; this dispute was settled under the GSA.

(b) a second count seeking to disallow any claims that FTX DM has or will assert against the Celsius debtors in their chapter 11 cases under section 502(d) of the Bankruptcy Code.

25.    Recently, the Celsius Litigation Administrator announced that it "will begin pursuing the return of preferential transfers (i.e., transfers made in the 90 days prior to the date that Celsius commenced its bankruptcy proceeding – between April 14, 2022, and July 13, 2022)."[8] Consistent with this announcement, between July 1 and July 5, 2024, the Celsius Litigation Administrator filed thousands of preference complaints against Initial Transferees in the Celsius chapter 11 cases. *See generally* Case No. 22-10964 (MG) (Bankr. S.D.N.Y. 2022).  Importantly for purposes of the Motion and this Objection, rather than skip over the Initial Transferees and pursue FTX DM as the purported subsequent transferee, the Celsius Litigation Administrator elected to undertake wide-ranging preference litigation against the Initial Transferees themselves under section 547 of the Bankruptcy Code. The Proposed FTX DM Preference Adversary is limited to recovering preferential transfers under sections 550 and 502(d), and for that reason should not proceed in any forum (including in the Bahamas Supreme Court, where it must be brought) until the nature and scope of preference liability and related defenses is crystallized through litigation against the Initial Transferees. FTX DM is not, and need not be, a party to litigation between the Celsius Litigation Administrator and the Initial Transferees.

## ARGUMENT

## I.    The Court Should Reject the Celsius Litigation Administrator's Invitation to Ignore Prevailing Principles of Comity

26.    Chapter 15 of the Bankruptcy Code provides "the United States' policy positions on foreign bankruptcy proceedings and endorses both unitary bankruptcy proceedings and

---

[8]    *See Litigation Oversight Committee – Celsius Network LLC, et al.*, Stretto, https://cases.stretto.com/CelsiusLOC/contentcard/6464-open-letter.

deference to ongoing foreign proceedings." *Vertiv, Inc. v. Wayne Burt PTE, Ltd.*, 92 F.4th 169, 182 (3d Cir. 2024) (citing *In re ABC Learning Ctrs. Ltd.*, 728 F.3d 301, 306 (3d Cir. 2013)). "Absent a change to the United States Bankruptcy Code or a specific policy position regarding the foreign jurisdiction where the bankruptcy proceedings are taking place, Chapter 15 will generally favor deference to parallel bankruptcy proceedings." *Id.* United States bankruptcy courts overseeing chapter 15 proceedings "favor granting comity to foreign bankruptcy proceedings because the assets of the debtor can be dispersed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic or piecemeal fashion…" *In re Irish Resolution Corp. Ltd.*, No. 13-12159 (CSS), 2014 WL 9953792, at *21 (Bankr. D. Del. Apr. 30, 2014) (quoting *In re Schimmelpenninck*, 183 F.3d 347, 365 (5th Cir. 1999)). Once a foreign representative obtains recognition, "a court in the United States shall grant comity or cooperation to the foreign representative." 11 U.S.C. § 1509(b)(3).

27.　　In *Vertiv, Inc. v. Wayne Burt PTE, Ltd.*, the Third Circuit clarified the test for when courts should "extend adjudicatory comity" to a foreign proceeding, observing, in pertinent part, that the foreign proceeding must be "parallel" to the United States civil action with respect to which the court is being asked to abstain from exercising jurisdiction. *Vertiv, Inc.*, 92 F.4th at 178. A civil action in the United States is "parallel" to a foreign bankruptcy proceeding when: (a) the foreign bankruptcy proceeding is ongoing in a duly authorized tribunal while the civil action is pending before the United States court; and (b) the outcome of the United States civil action may affect the debtor's estate. *Id.* at 179-80 (citing *Phila. Gear Corp. v. Phila. Gear de Mex., S.A.*, 44 F.3d 187, 193 (3d Cir. 1994)).

28.　　Here, the Bahamas Official Liquidation is indisputably a "parallel" foreign proceeding to the instant contested matter in this chapter 15 case and the Proposed FTX DM

Preference Adversary. This Court already effectively found that the first factor is satisfied when it entered the Recognition Order. *See* Recognition Order ¶ I ("The Bahamian Provisional Liquidation is a 'foreign proceeding' as defined in section 101(23) of the Bankruptcy Code and is entitled to recognition by this Court pursuant to section 1517 of the Bankruptcy Code."); Recognition Order ¶ J ("FTX Digital's center of main interests is located in the Commonwealth of the Bahamas, which is also where the Bahamian Provisional Liquidation is pending. Accordingly, the Bahamian Provisional Liquidation is the 'foreign main proceeding' of FTX Digital, as that term is defined in section 1502(4) of the Bankruptcy Code, and is entitled to recognition as such pursuant to section 1517(b)(1) of the Bankruptcy Code."). Additionally, Courts have found that "the liquidation laws of the Bahamas are in harmony with those of the United States." *In re Northshore Mainland Servs., Inc.*, 537 B.R. 192, 205 n. 8 (citing *In re Spanish Cay Co., Ltd.*, 161 B.R. 715, 726 (Bankr. S.D.Fla. 1993)). Furthermore, the outcome of the Proposed FTX DM Preference Adversary may affect the FTX DM estate in the Bahamas Official Liquidation by purporting to require FTX DM to make distributions to the Celsius Litigation Administrator. Greaves Decl. ¶ 19. Accordingly, this Court should deny the Motion in light of prevailing principles of international adjudicatory comity, which require the Celsius Litigation Administrator to seek relief from the Bahamas Stay from the Bahamas Supreme Court to assert the causes of action in the Proposed Complaint. Rolle-Kapousouzoglou Decl. ¶ 11.

A. **The Celsius Litigation Administrator Must Pursue Claims Against FTX DM in the Bahamas Official Liquidation**

29. Chapter 15 of the Bankruptcy Code does not provide an independent statutory basis for claims against the debtor to be asserted in the chapter 15 proceeding. *See* H. R. Rep. 109-31 (providing that recognition of a foreign main proceeding under section 1520 of the Bankruptcy Code does not affect "the right of any party to file claims or take other proper actions" in the

14

foreign proceeding). Chapter 15 is designed to be ancillary to a foreign proceeding where claims against the foreign debtor will be ultimately determined. *See JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*, 412 F.3d 418, 424 (2d Cir. 2005) ("We have repeatedly held that U.S. Courts should ordinarily decline to adjudicate creditor claims that are the subject of a foreign bankruptcy proceeding…In such cases, deference to the foreign court is appropriate so long as the foreign proceedings are procedurally fair and do not contravene the laws or public policy of the United States."); *see also In re Northshore Mainland Servs., Inc.*, 537 B.R. at 207 (quoting *Finanz AG Zurich v. Banco Economico S.A.*, 192 F.3d 240, 246 (2d Cir. 1999) ("Since 'the equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding,' American courts regularly defer to such actions.") (quoting *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713-14 (2d Cir. 1987)). Thus, a chapter 15 case is distinct from a plenary chapter 11 case, where the United States bankruptcy court would typically serve as the exclusive venue for claims adjudication.

30.    *Altos Hornos* is instructive. There, the Second Circuit dismissed a prepetition lawsuit pending in the United States District Court for the Southern District of New York, in favor of bankruptcy proceedings in Mexico on the grounds of international comity. *Altos Hornos*, 412 F.3d at 429. In its lawsuit, the plaintiff bank sought a judgment declaring that certain funds held in a collection account belonged to the bank. *Id.* at 422. The debtors' customers had made payments directly into this collection account. *Id.* The Second Circuit held that the U.S. district court lawsuit was a "thinly veiled attempt to extract partial payment from the debtor on the debt owed outside a foreign bankruptcy proceeding" and that "[o]ur cases establish that creditors may not use U.S. courts to circumvent foreign bankruptcy proceedings." *Id.* at 427.

31.     The same reasoning applies here.  Any claim against FTX DM, particularly a claim that seeks to "enforce relief against FTX DM as it relates to the redirection of distributions on account of DM Customer Entitlement Claims," Mot. ¶ 32, must be adjudicated in the Bahamas Official Liquidation. By seeking relief from the chapter 15 stay imposed by this Court, the Motion is trying to circumvent the claims administration process in The Bahamas. Indeed, all claims against FTX DM, whether directly filed or through the Bahamas Opt-In Election, must be filed in the Bahamas Official Liquidation. Thereafter, all such claims will be reconciled and assets distributed to holders of compensable claims in the Bahamas Official Liquidation. If the Celsius Litigation Administrator has claims against or believes the Celsius estates are entitled to distributions from FTX DM for Dotcom Customer Entitlement Claims, he must first seek to lift the Bahamas Stay or otherwise obtain leave from the Bahamas Supreme Court. Rolle-Kapousouzoglou Decl. ¶ 11. As of the date of this Objection, the Celsius Litigation Administrator has not sought or obtained leave from the Bahamas Supreme Court to prosecute the causes of action asserted in the Proposed Complaint. Rolle-Kapousouzoglou Decl. ¶ 12. This Court should not allow the Celsius Liquidation Administrator to make an end run around the plenary Bahamas Official Liquidation.

**B.     The Motion is Futile Because the Celsius Litigation Administrator is Seeking to Recover FTX DM's Assets Located Outside the Territorial Jurisdiction of the United States**

32.     Upon recognition of a foreign main proceeding, section 1520(a)(1) of the Bankruptcy Code imposes the stay under section 362 of the Bankruptcy Code "with respect to the debtor and property of the debtor within the territorial jurisdiction of the United States."  11 U.S.C. § 1520. The chapter 15 stay triggered by the Recognition Order complements the Bahamas Stay, including with respect to any property of FTX DM located in the United States. *See* Recognition

Order ¶ 4 ("All relief and protection afforded to foreign main proceedings under section 1520 of the Bankruptcy Code is hereby granted to the Bahamian Provisional Liquidation, FTX Digital, FTX Digital's property located in the United States, and the Joint Provisional Liquidators, as applicable, including application of the sections 1520(a) and 362 of the Bankruptcy Code stay to bar actions against FTX Digital and/or property of FTX Digital located within the territorial jurisdiction of the United States upon entry of this Order"); Rolle-Kapousouzoglou Decl. ¶ 7.

33.    However, the relief sought by the Celsius Litigation Administrator does not implicate the Bankruptcy Code's chapter 15 stay because FTX DM has only limited and contingent assets within this Court's jurisdiction. Greaves Decl. ¶ 13; *see also In re Gold & Honey Ltd.*, 410 B.R. 357, 373 n. 19 (Bankr. E.D.N.Y. 2009) ("§ 1520 only makes §§ 361 and 362 applicable with respect to the debtor and property of the debtor within the United States."). Rather, the relief sought by the Celsius Litigation Administrator implicates the Bahamas Stay because, (a) the assets currently in FTX DM's possession are located outside the territorial jurisdiction of the United States; and (b) the Bahamas Supreme Court must grant leave to any proceedings brought against FTX DM or its assets for it to be recognized in the Bahamas Court. Greaves Decl. ¶ 13; Rolle-Kapousouzoglou Decl. ¶ 8. Accordingly, it would be futile for the Court to grant the lift-stay relief requested in the Motion, as such relief would not enable the Celsius Litigation Administrator to recover any property from FTX DM, even if the underlying preference liability had been established. Only the Bahamas Stay prohibits the Celsius Litigation Administrator from taking actions to recover such property; and, as discussed above, the Celsius Litigation Administrator has not sought to lift the Bahamas Stay or leave from the Bahamas Supreme Court to pursue the causes of action in the Proposed Complaint. Rolle-Kapousouzoglou Decl. ¶ 12.

## II.    The Celsius Litigation Administrator Has Failed to Establish "Cause" to Lift the Stay

34.    Upon a bankruptcy court's recognition of a foreign main proceeding, "sections 361 and 362 apply with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States." 11 U.S.C. § 1520(a)(1); *In re Innua Canada Ltd.*, No. 09-16362 (DHS), 2009 WL 1025090, at *4 (Bankr. D.N.J. Apr. 15, 2009) ("Section 1520 provides the relief granted to the foreign representative upon the [c]ourt's entry of an order recognizing the foreign proceeding such as implementing the automatic stay under Section 362 and the automatic application of sections 363, 549 and 552 to interests of the debtor in property located within the territorial jurisdiction of the United States 'to the same extent that the sections would apply to property of the estate,' 'which is necessary since Section 541 is not applicable to Chapter 15 cases.'") (quoting 8 COLLIER ON BANKRUPTCY ¶ 1520.01 (15th ed. rev.2008)).

35.    Pursuant to the Recognition Order, section 362 of the Bankruptcy Code implements the chapter 15 stay upon FTX DM's property located within the territorial jurisdiction of the United States. Section 362(d)(1) of the Bankruptcy Code permits a court to grant relief from the automatic stay "for cause."  11 U.S.C. § 362(d)(1).  "The term 'cause' as used in section 362(d) has no obvious definition and is determined on a case-by-case basis."  *See Integrated Health Servs., Inc.*, No. 00-389 (MFW), 2000 Bankr. LEXIS 1319, at *4–5 (Bankr. D. Del. Aug. 11, 2000); *In re Lincoln*, 264 B.R. 370, 372 (Bankr. E.D. Pa. 2001) ("Each request for relief for 'cause' under § 362(d)(1) must be considered on its own facts.") (quoting *In re Hohol*, 141 B.R. 293, 297 (M.D. Pa. 1992).

36.    In determining a motion for stay relief for "cause" to pursue litigation in another forum, courts in this district consider the factors: (a) whether any great prejudice to either the bankruptcy estate or the debtor will result from continuation of the civil suit; (b) whether the

18

hardship to the moving party by maintenance of the automatic stay considerably outweighs the hardship to the debtor; and (c) the probability of the moving party prevailing on the merits.  *In re Trump Entm't Resorts, Inc.*, 526 B.R. 116, 120–21 (Bankr. D. Del. 2015) (citing *In re Rexene Prods. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992).  "To establish cause, the party seeking relief from the stay must show that 'the balance of hardship from not obtaining relief tips *significantly* in [its] favor.'"  *Atl. Marine, Inc. v. Am. Classic Voyages, Co. (In re Am. Classic Voyages, Co.)*, 298 B.R. 222, 225 (D. Del. 2003) (quoting *In re FRG*, 115 B.R. 72, 74 (E.D. Pa. 1990)) (emphasis added).

**A.    FTX DM Would Suffer Great Prejudice If the Stay Were Lifted to Permit the Proposed FTX DM Preference Adversary to Proceed**

37.    "The most important factor in determining whether to grant relief from the automatic stay to permit litigation to proceed against a debtor in another forum is the effect of such litigation on the administration of the estate.  Even slight interference with the administration may be enough to preclude relief in the absence of a commensurate benefit."  *In re W.R. Grace & Co.*, No. 01-01139 (JFK), 2007 Bankr. LEXIS 1214, at *9 n.7 (Bankr. D. Del. Apr. 13, 2007) (quoting *In re Curtis*, 40 B.R. 795, 806 (Bankr. D. Utah 1984)).  Lifting the chapter 15 stay at this critical stage in the Bahamas Official Liquidation would result in wasteful, premature and duplicative litigation, at a time when FTX DM is focused on the solicitation and confirmation process, the implementation and facilitation of the Bahamas Opt-In Election, and the finalizing of the dual-venue joint distribution and claims process with the Chapter 11 Debtors. Greaves Decl. ¶ 16. Beginning upon the mailing of the Solicitation Packages on or about July 10, 2024 and continuing for the next several months, the Foreign Representatives anticipate their full attention and resources and the full attention and resources of FTX DM and its professionals will be required to

finalize the mechanics of the Bahamas Opt-In Election and administer the proof of debt reconciliation and distribution process in the Bahamas Official Liquidation. *Id*.

38.     The Celsius Litigation Administrator argues that the relief sought has been "tailored . . . to ensure that there will be no diminution of FTX DM's estate", Mot. ¶ 31–32. But whether the relief will diminish FTX DM's estate in the Bahamas Official Liquidation is not the relevant inquiry. Instead, the relevant the inquiry is the extent of the effect of the Proposed FTX DM Preference Adversary on the *administration* of FTX DM's Bahamas Official Liquidation. *In re W.R. Grace & Co.*, 2007 Bankr. LEXIS 1214, at *9 n.7

39.     This effect would be significant. An order granting the Motion would result in the Celsius Litigation Administrator commencing the Proposed FTX DM Preference Adversary, thereby forcing FTX DM to participate in what the Celsius Litigation Administrator describes as "necessary discovery . . . in order to finalize the Subsequent Transfers Schedule and attribute FTX wallets against appropriate entities," Mot. ¶ 16 n. 8. In addition to this discovery, FTX DM would otherwise become mired in third-party preference litigation that has no bearing on FTX DM's estate in the Bahamas Official Liquidation until the Celsius Litigation Administrator's sprawling litigation against the Initial Transfers results in preference judgments or settlements. Proceeding with litigation against FTX DM now would divert necessary resources away from the Bahamas Official Liquidation at a critical juncture. Greaves Decl. ¶ 17. The Celsius Litigation Administrator's request for discovery is particularly onerous where FTX DM would, at the very least, be required to conduct investigations of over 538 unique accounts contained in the Subsequent Transfers Schedule. *Id*. Worse yet, the Celsius Litigation Administrator is not even certain that this discovery would be relevant to its claims against FTX DM. Mot. ¶ 16 n.8 ("[T]he Celsius Litigation Administrator cannot confirm at this time whether FTX wallets that received

the avoidable transfers belong to FTX DM or the Chapter 11 Debtors. Accordingly, the Subsequent Transfers Schedules includes some claims that may not ultimately be attributable to FTX DM. . . .").  The Celsius Litigation Administrator's request to lift the chapter 15 stay to initiate premature litigation against FTX DM, including broad discovery, amounts to a premature and unnecessary fishing expedition that would greatly prejudice FTX DM's ability to administer the Bahamas Official Liquidation in a timely and efficient manner that comports with the Chapter 11 Debtors' confirmation timeline. Greaves Decl. ¶ 18. Accordingly, FTX DM would suffer great prejudice if the chapter 15 were lifted.

> **B.     The Celsius Litigation Administrator's Purported Hardships Do Not Considerably Outweigh the Significant Hardships That FTX DM Would Face If the Motion Were Granted**

40.     The Celsius Litigation Administrator argues that if the chapter 15 stay were to remain in place, he would be harmed by needing to litigate "substantially similar Preference Actions in two separate courts."  Mot. ¶ 34.  But, the Celsius Litigation Administrator has chosen to commence preference actions against the Initial Transferees, in the Celsius bankruptcy cases, with separate litigation against FTX DM to recover any voidable transfers to the extent he can establish that FTX DM is a subsequent transferee. *See generally* Case No. 22-10964 (MG) (Bankr. S.D.N.Y. 2022). By electing to prosecute Celsius' claims in this manner, the Celsius Litigation Administrator's purported hardship of being forced to litigate in "two separate courts" is entirely of his own making. Although it is not for the Foreign Representatives to opine on the Celsius Litigation Administrator's litigation strategy, FTX DM should not be forced to bear the costs of the Celsius Litigation Administrator's decision to launch sprawling litigation against the Initial Transferees in the first instance, particularly where there is nothing to be gained from pursuing simultaneous litigation against the Initial Transferees and FTX DM.

41.     There is no "harm" to the Celsius Litigation Administrator if the chapter 15 stay (or the Bahamas Stay) remains in place while the Celsius Litigation Administrator proceeds against the Initial Transferees. Section 550 of the Bankruptcy Code preserves the Celsius Litigation Administrator's ability to recover transferred property to the extent the transfer is avoided under section 547 of the Bankruptcy Code for a period of up to "one year after the avoidance of the transfer on account which recovery under this section is sought." *See* 11 U.S.C. §§ 550(a); (f); *In re Res., Recycling & Remediation, Inc.*, 314 B.R. 62, 69 (Bankr. W.D. Pa. 2004) ("The proceeding to recover the value of the transfer [under section 550 of the Bankruptcy Code] must, however, be commenced within the earlier of one year *after* the transfer has been avoided or the time the case is closed or dismissed.") (emphasis in original). Furthermore, judicial determination of the underlying transfers at issue is required before relief under section 502(d) of the Bankruptcy Code can be provided. *In re FBI Wind Down, Inc.*, 581 B.R. 387, 414 (Bankr. D. Del. 2018) ("A claim may be disallowed under § 502(d) if there is a judicial determination of a claimant 'having received preferential transfer pursuant to § 547 or property recoverable pursuant to § 550.' If a debtor or trustee has not yet received a judicial determination, the party cannot 'avail itself of the benefits of section 502(d).'") (citations omitted).

42.     The Motion fails to demonstrate what harm would befall the Celsius Litigation Administrator if he were enjoined from litigating his subsequent-transferee theory against FTX DM until after the Celsius bankruptcy court determines the nature and amount of any preferential transfers to the Initial Transferees after accounting for any applicable defenses. FTX DM submits that simultaneously pursuing lawsuits against the Initial Transferees and the Proposed FTX DM Preference Adversary would fail to advance the Celsius Litigation Administrator's interest in maximizing the assets available for distribution to Celsius creditors, particularly when compared

to the appropriately sequenced alternative. Any benefit that the Celsius Litigation Administrator could derive from such simultaneous litigation would be outweighed by the harm caused to FTX DM and the Bahamas Official Liquidation. FTX DM would be forced to expend considerable resources prematurely litigating the Proposed FTX DM Preference Adversary, including responding to the Celsius Litigation Administrator's discovery requests, at a critical juncture in the Bahamas Official Liquidation. Greaves Decl. ¶ 17. The Motion's generalized references to administrative convenience utterly fail to demonstrate that the relief requested is warranted under the circumstances and fails to show that commencing the Proposed FTX DM Preference Adversary until after litigation against the Initial Transferees advances to a more mature stage would not equally serve the interests of the Celsius Litigation Administrator while reducing litigation costs due to the narrowed scope of disputed issues. The Celsius Litigation Administrator's professed limited budget and desire to proceed with the preference actions in an administratively convenient way does not justify relief that would flout the jurisdiction and authority of the Bahamas Supreme Court and interfere with the administration of the Bahamas Official Liquidation. Thus, there is no "harm" imposed on the Celsius Litigation Administrator by maintaining the chapter 15 stay, and, to the extent any "harm" exists, it cannot "considerably outweigh" the harm to FTX DM if the chapter 15 stay were lifted and invasive discovery and premature litigation against FTX DM were permitted to proceed outside of the Bahamas Supreme Court.

43.     There is also no harm in maintaining the chapter 15 stay while the Celsius Litigation Administrator proceeds against the Initial Transferees because, at this time, the Celsius estates cannot receive distributions in the Bahamas Official Liquidation on account of the Customer Transfers. Greaves Decl. ¶ 20. The Motion states that "certain of these initial transferees are also holders of a DM Customer Entitlement Claim and/or a DM Excess Claim under the DM

Liquidation" and that the Proposed FTX DM Preference Adversary "seeks only to redirect distributions already contemplated by the DM Liquidation" from the Initial Transferees to the Celsius estates. Mot. ¶ 30. However, to assert DM Customer Entitlement Claims and/or DM Excess Claims against FTX DM, the Initial Transferees must first make a valid Bahamas Opt-In Election into the Bahamas Official Liquidation. Greaves Decl. ¶ 21. Celsius itself currently does not hold any Dotcom Customer Entitlement Claims against the Chapter 11 Debtors in order to be eligible to make the Bahamas Opt-In Election; Celsius is not a "Dotcom Customer" as defined in the GSA as it was never a customer of record on the FTX.com Exchange. Greaves Decl. ¶ 22. The Celsius Litigation Administrator must first successfully and fully adjudicate any initial, underlying and immediate Customer Transfers before it is entitled to receive distributions on account of any Dotcom Customer Entitlement Claims held by the Initial Transferees either in the Chapter 11 Cases or in the Bahamas Official Liquidation. Accordingly, there is no harm in maintaining the chapter 15 stay at this time while the Celsius Litigation Administrator first establishes entitlement to distributions on account of the Customer Transfers in either the Chapter 11 Cases or Bahamas Official Liquidation. *See In re EnCap Golf Holdings, LLC*, No. 08-18581 (NLW), 2008 WL 3193786, at * 4 (Bankr. D.N.J. Aug. 4, 2008) (holding that it was "premature" to consider whether the stay should be lifted to pursue arbitration as the terms of the applicable policy had not been exhausted and therefore liability for claims against the debtor had not yet been established).

**C.    The Celsius Litigation Administrator Has Not Sufficiently Demonstrated a Probability of Success on the Merits**

44.    While "[e]ven a slight probability on the merits may be sufficient to support lifting an automatic stay in an appropriate case," *In re Cont'l Airlines, Inc.*, 152 B.R. 420, 426 (D. Del. 1993), the Celsius Litigation Administrator fails to satisfy even this low bar, as he is presently not entitled to receive distributions from FTX DM on account of the Customer Transfers. The Celsius

Litigation Administrator has only within the last week commenced avoidance actions against the Initial Transferees. Furthermore, the Celsius Litigation Administrator is not currently entitled to participate in the Bahamas Official Liquidation on account of the Customer Transfers. Until the Celsius Litigation Administrator successfully initiates and fully adjudicates avoidance claims against the Initial Transferees who allegedly instituted the Customer Transfers, he will not be successful in proceeding against FTX DM or participating in the Bahamas Official Liquidation on account of such Customer Transfers.

45.    Furthermore, the Celsius Litigation Administrator admits that he does not know whether FTX DM is the proper defendant. Mot. ¶ 16 n.8 ("[T]he Celsius Litigation Administrator cannot confirm at this time whether FTX wallets that received the avoidable transfers belong to FTX DM or the Chapter 11 Debtors. Accordingly, the Subsequent Transfers Schedules includes some claims that may not ultimately be attributable to FTX DM. . . ."). Assuming *arguendo* that FTX DM is a proper defendant, there is no conceivable way to properly trace whether the FTX customers' funds belong to FTX DM or FTX Trading. *See* GSA Recitals ("WHEREAS, the JOLs have reviewed such books, records, and analyses and have concluded that FTX.com Exchange . . . records are so commingled (both as between Dotcom Customers' funds and as between FTX DM and the Debtors) that neither the accounts of FTX DM and the Debtors nor those of individual Dotcom Customers can be recreated, and that tracing of assets and funds is not feasible."); *see also In re Petters Co., Inc.*, 557 B.R. 711, 726-27 (Bankr. D. Minn. 2016) (holding that plaintiffs failed to "satisfy[y] the requirements for stating a claim under § 550(a) because they fail to allege which Defendant is a subsequent transferee").

46.    Moreover, neither the Motion nor the Ehrler Declaration offer anything more than conclusory statements that funds withdrawn from the Celsius platform were deposited onto the

FTX DM platform.  *See* Mot. ¶ 1 ("[T]here were a number of occasions in which Celsius account holders withdrew Celsius' assets from the Celsius platform during the Celsius Preference Period and then deposited such property onto the FTX DM cryptocurrency exchange."); *id.* ¶ 1 n.3 ("A list of account holders who transferred Celsius' property off the Celsius cryptocurrency exchange platform during the Celsius Preference Period and deposited such property onto the FTX DM cryptocurrency exchange is attached to the Ehrler Declaration as Exhibit C."). There is simply no basis to confirm that the funds allegedly withdrawn from Celsius were deposited into, and held by, FTX DM. Furthermore, the only property of FTX DM "within the territorial jurisdiction of the United States" is limited and contingent by virtue of the United States Department of Justice's forfeiture action. Accordingly, there is no FTX DM property in the United States that the Celsius Litigation Administrator could currently recover on account of the Customer Transfers. Greaves Decl. ¶ 13. The Celsius Litigation Administrator has failed to demonstrate event a slight probability of success on the merits.

### D.     Lifting the Chapter 15 Stay Will Not Serve Judicial Economy

47.     The Celsius Litigation Administrator's final argument that lifting the chapter 15 stay and allowing the Proposed FTX DM Preference Adversary to proceed against FTX DM will serve judicial economy is meritless.  *See* Mot. ¶¶ 40–43.  While it could potentially be "practical and less burdensome" from the Celsius Litigation Administrator's perspective to commence subsequent-transferee litigation against FTX DM now, the same is manifestly not true for FTX DM or the Bahamas Supreme Court, where the asserted claims must be brought. In his apparent haste to file thousands of avoidance actions against the Initial Transferees before expiration of the limitations period on July 13, 2024, the Celsius Litigation Administrator has failed to identify the actions (including claims to recover from purported subsequent transferees under section 550) that

should not – and need not – be commenced now. Maintaining the chapter 15 stay (and the Bahamas Stay) while the Celsius Litigation Administrator proceeds against the Initial Transferees would inevitably narrow the scope of disputed issues between the Celsius Litigation Administrator and FTX DM, avoid wasteful and duplicative litigation, and promote judicial economy. Thus, contrary to the Celsius Litigation Administrator's contentions, it would not be "practical and less burdensome on all parties in interest," Mot. ¶ 43, to lift the chapter 15 stay and permit the Proposed FTX DM Preference Adversary. *In re Int'l Endoscope Mfrs., Inc.*, 79 B.R. 620, 623 (Bankr. E.D. Pa. 1987) ("Despite the temptation presented in relegating what promises to be an extended dispute to other forums, we believe that this [judicial economy] factor is insufficient to tip the 'balance of hardships' in [movant's] favor."). The Motion should be denied, and if the Celsius Litigation Administrator believes that his subsequent-transferee claims against FTX DM have merit, he should pursue those claims in the Bahamas Supreme Court at the appropriate juncture in this preference litigation against the Initial Transferees after obtaining relief from the Bahamas Stay. This course of action has the advantage of being both the most efficient and the only way for the litigation to proceed.

## **RESERVATION OF RIGHTS**

48. The Foreign Representatives reserve all rights, claims, defenses, and remedies, including without limitation, to supplement and amend this Objection, to raise further and other objections prior to or at the hearing on the Motion, to introduce evidence prior to or at the hearing on the Motion, and to introduce any other relevant information in support of the positions set forth in this Objection prior to or at the hearing on the Motion.

## <u>CONCLUSION</u>

49.     For the foregoing reasons, the Foreign Representatives respectfully request this Court deny the Motion.

*[Remainder of Page Intentionally Left Blank]*

Dated:  July 8, 2024                              Respectfully submitted,
            Wilmington, Delaware


*/s/ Brendan J. Schlauch*
**RICHARDS, LAYTON & FINGER, P.A.**          **WHITE & CASE LLP**

Kevin Gross (No. 209)                        Jessica C. Lauria (admitted *pro hac vice*)
Paul N. Heath (No. 3704)                     J. Christopher Shore (admitted *pro hac vice*)
Brendan J. Schlauch (No. 6115)               Brian D. Pfeiffer (admitted *pro hac vice*)
David T. Queroli (No. 6318)                  Ashley R. Chase (admitted *pro hac vice*)
One Rodney Square                            Brett L. Bakemeyer (admitted *pro hac vice*)
920 N. King Street                           1221 Avenue of the Americas
Wilmington, DE 19801                         New York, NY 10020
Telephone:    (302) 651-7700                 Telephone:    (212) 819-8200
Facsimile:    (302) 651-7701                 jessica.lauria@whitecase.com
gross@rlf.com                                cshore@whitecase.com
heath@rlf.com                                brian.pfeiffer@whitecase.com
schlauch@rlf.com                             ashley.chase@whitecase.com
queroli@rlf.com                              brett.bakemeyer@whitecase.com

-and-

                                             Thomas E Lauria (admitted *pro hac vice*)
                                             Richard S. Kebrdle (admitted *pro hac vice*)
                                             200 South Biscayne Boulevard, Suite 4900
                                             Miami, FL 33131
                                             Telephone:    (305) 371-2700
                                             tlauria@whitecase.com
                                             rkebrdle@whitecase.com


                                             *Attorneys for the Foreign Representatives of*
                                             *FTX Digital Markets Ltd. (in Official*
                                             *Liquidation)*